51 F.3d 1179
 40 ERC 1577, 25 Envtl. L. Rep. 20,837
 PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., Friends
of the Earth, Inc., Pennsylvania Public Interest
Research Group, Inc.
v.
Sheila E. WINDALL, as Secretary of the Air Force, Appellant
at No. 94-5059.
Public Interest Research Group of New Jersey, Inc., Friends
of the Earth, Inc., Appellants at No. 93-5771.
 Nos. 93-5771, 94-5059.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 27, 1994.
Decided April 10, 1995.
 
 Carolyn S. Pravlik, Bruce J. Terris, (argued), Terris, Pravlik & Wagner, Washington, DC, Philadelphia, PA, for Public Interest Research Group of New Jersey Inc., Friends of the Earth, Inc., Pennsylvania Public Interest Research Group, Inc.
 Andrew C. Mergen, (argued), U.S. Dept. of Justice, Washington, DC, for Sheila E. Windall, as Secretary of the Air Force.
 Present: STAPLETON, HUTCHINSON and ROSENN, Circuit Judges
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 We have before us an appeal and a cross-appeal from an order of the United States District Court for the District of New Jersey awarding counsel fees to the appellants, the Public Interest Research Group of New Jersey, Inc., Friends of the Earth, Inc. and the Pennsylvania Public Interest Research Group, Inc. (collectively "PIRG"), as prevailing parties under the attorney fee shifting provision of the Clean Water Act, 33 U.S.C.A. Sec. 1365(d) (West Supp.1994). PIRG questions the fifty percent negative multiplier the district court applied to its initial fee request and the denial of its application for counsel fees and expenses incurred in litigating the initial fee request. Appellee, the United States Air Force ("Air Force"), cross-appeals. It argues that the district court used an incorrect market to calculate PIRG's award and failed to deduct duplicative, unreasonable and excessive time in determining the lodestar.[1]
 
 
 2
 The principles governing attorney fee awards are set out in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Applying them, we conclude that the district court erred in adopting a flat fifty percent negative multiplier. We will therefore vacate its award of attorney fees and remand for further proceedings consistent with this opinion. Because the district court's order denying PIRG any of the fees it incurred in litigating the fee dispute was premised on the amount it awarded in the underlying citizens' suit, we will also vacate that order and direct the district court to reconsider this fee request after it recalculates the amount due PIRG for legal services it incurred in the underlying citizens' suit.
 
 
 3
 On the Air Force's cross-appeal, we will affirm the district court's determination that the relevant legal market for calculating the lodestar is the District of New Jersey, and its conclusion that attorneys' time reasonably spent in preparing a statutorily required notice of intent is reimbursable. Finally, we suggest that the district court, on remand, should consider the Air Force's objections to PIRG's time charges, determine whether they are reasonable and make appropriate findings to support that determination.
 
 I. Background
 
 4
 In May 1990, PIRG filed a citizens' suit against the Air Force in the district court, located in Trenton, New Jersey. The Washington, D.C. public interest law firm of Terris, Pravlik & Wagner represented PIRG. PIRG claimed that the Air Force violated the National Pollutant Discharge Elimination System and New Jersey Pollutant Discharge Elimination System ("NPDES/NJPDES") permits[2] for McGuire Air Force Base. PIRG sought: (1) a declaratory judgment that the Air Force had violated and continued to violate the Federal Water Pollution Control Act, 33 U.S.C.A. Secs. 1311, 1318, 1342 (West 1986 & Supp.1994); (2) injunctive relief restraining the Air Force from continuing to operate McGuire Air Force Base in violation of its NPDES permit; (3) an order that the Air Force comply with, and provide PIRG with copies of, discharge monitoring reports and similar documents; and (4) civil monetary penalties pursuant to 33 U.S.C.A. Secs. 1319(d), 1365(a) (West 1986 & Supp.1994).[3]
 
 
 5
 While PIRG's suit was pending, the Air Force and the Environmental Protection Agency ("EPA") agreed to a consent order in a separate EPA action against both the Air Force and Army.[4] The district court approved this order. Under the consent order, the Air Force promised to design and construct a tertiary sewage treatment plant by July 31, 1994.[5] It also promised to "attain compliance with the final effluent limitations the NJPDES permit(s)" required by November 30, 1994. Appendix ("App.") at 246. In addition, the consent order imposed interim effluent discharge limitations and required the Air Force to submit progress reports on compliance to the EPA and the New Jersey Department of Environmental Protection ("NJDEP"). The consent order stated it "[did] not constitute a waiver from compliance with or a modification of the effective terms and conditions of the [Air Force's] permits, which remain in full force and effect." Id.
 
 
 6
 After entry of the EPA consent order, the Air Force offered to settle with PIRG, but never made a formal settlement offer under Rule 68 of the Federal Rules of Civil Procedure.[6] PIRG rejected the Air Force's offer because it failed to provide all the relief PIRG wanted and did not admit liability. PIRG did make a counteroffer that would have required the Air Force to pay civil penalties for every future permit violation. The Air Force contends that PIRG's primary reason for declining its offer was the Air Force's refusal to pay civil penalties or restitution for the environmental damage PIRG claimed was the result of the Air Force's noncompliance with its discharge permits.
 
 
 7
 Following oral argument, the district court granted PIRG's motion for summary judgment on liability and issued a permanent injunction against the Air Force. See Public Interest Research Group of New Jersey, Inc. v. Rice, 774 F.Supp. 317, 318 (D.N.J.1991). It ordered the Air Force to: (1) comply with the EPA consent order; (2) maximize compliance with its current NJPDES permit, including applicable effluent limitations; (3) complete all remedial measures proposed by the Air Force in response to one of PIRG's interrogatories; (4) undertake all necessary maintenance and repairs at the existing plant to continue its level of operation; (5) comply with all reporting and monitoring requirements to the EPA and NJDEP; and (6) give PIRG copies of all reports and operating logs submitted to the NJDEP and EPA for four years after entry of the court's order. Id. at 330-31. The district court then determined that the consent order in the EPA's action did not fully vindicate the citizens' rights that PIRG asserted because the consent order did not require the Air Force to comply with its permits. Id. at 327. It stated: "[This order] represents the vindication of the plaintiffs' right to bring suit when the [EPA] cannot or will not protect the environment." Id. at 326.
 
 
 8
 The district court stayed the Air Force's motion for summary judgment on PIRG's claim for civil penalties on the defense of sovereign immunity pending decision in Department of Energy v. Ohio, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). After the Supreme Court held that sovereign immunity barred recovery of monetary penalties from the United States in citizens' suits under the Clean Water Act, the Air Force renewed its motion to deny PIRG's claim for civil penalties. Id. at 617-21, 112 S.Ct. at 1635-36. Instead of deciding the motion, the court allowed PIRG voluntarily to withdraw its claim for civil penalties, pursuant to Federal Rule of Civil Procedure 41(a)(2), and thereafter denied reconsideration.
 
 
 9
 In the meantime, PIRG and the Air Force began negotiations over counsel fees and costs. During them, the Air Force made a Rule 68 offer of $130,000 for attorneys' fees and expenses. The parties did not reach agreement, and PIRG submitted a fee application to the district court. It attempted to segregate the legal fees and costs it incurred in pursuing declaratory and injunctive relief from those incurred in pursuing civil penalties or restitution.
 
 
 10
 PIRG suggested three legal service markets whose hourly rates might be used: (1) Washington, D.C.; (2) the District of New Jersey; and (3) southern New Jersey. Depending on the market chosen, PIRG's claim for fees and expenses ranged from $166,946.50 to $240,897.50.
 
 
 11
 The district court referred the fee issue to a magistrate judge. The magistrate judge recommended awarding attorneys' fees of $108,247.38 and a total award of $118,875.08 for fees and costs. The magistrate judge's market for setting PIRG's attorneys' hourly rate was the District of New Jersey.
 
 
 12
 The magistrate judge did not fully consider the Air Force's contention that the hours PIRG claimed were inadequately documented, excessive or duplicative; but, because PIRG succeeded on only one of the two issues litigated, recommended a fifty percent negative multiplier. The magistrate judge classified the remedies sought into two categories: injunctive relief and monetary damages. A fifty percent negative multiplier was recommended because PIRG obtained no monetary damages, the relief sought, on one of the two claims. The magistrate judge noted that the injunctive relief granted to PIRG was substantially identical to the relief in the consent order between the EPA and Air Force, but nevertheless concluded that PIRG achieved "limited" success on this issue.[7] Finally, the magistrate judge recommended adding $11,136.12 in fees to cover half the attorney time charged to PIRG's demand for a civil penalty, for a total award of $130,011.20 for fees and expenses incurred in the underlying citizens' suit.
 
 
 13
 PIRG had also filed an application for the attorneys' fees and expenses it incurred in the dispute over the fee award. The magistrate judge recommended this application be denied because the $130,011.20 recommended for legal services and costs in the underlying case was a mere $11.20 over the Rule 68 offer that the Air Force had made to settle the underlying fee dispute.
 
 
 14
 On December 2, 1993, the district court issued a judgment and final order awarding PIRG the recommended amount of $130,011.20 for fees and expenses on PIRG's initial application but denying its application for the fees and expenses it incurred in the fee dispute itself. These timely appeals followed.
 
 II. Jurisdiction & Standard of Review
 
 15
 The district court had subject matter jurisdiction over this case under section 505 of the Clean Water Act, 33 U.S.C.A. Sec. 1365 (West 1986 & Supp.1994). We have appellate jurisdiction over the district court's final order awarding fees under 28 U.S.C.A. Sec. 1291 (West 1993).
 
 
 16
 The standards the district court should use in calculating an attorney fee award are legal questions subject to plenary review. See Sosebee v. Rath, 893 F.2d 54, 55 (3d Cir.1990); Student Pub. Interest Research Group of New Jersey, Inc. v. AT & T Bell Lab., 842 F.2d 1436, 1442 n. 3 (3d Cir.1988) ("SPIRG "). "The question of an attorney's marketplace billing rate ... is a factual question which is subject to a clearly erroneous standard of review." Black Grievance Comm. v. Philadelphia Elec. Co., 802 F.2d 648, 652 (3d Cir.1986) (citing In re Fine Paper Antitrust Litig., 751 F.2d 562, 591 (3d Cir.1984)), vacated on other grounds, 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987). The amount of a fee award, however, is within the district court's discretion so long as it "employs correct standards and procedures and makes findings of fact not clearly erroneous." Northeast Women's Ctr. v. McMonagle, 889 F.2d 466, 475 (3d Cir.1989), cert. denied, 494 U.S. 1068, 110 S.Ct. 1788, 108 L.Ed.2d 790 (1990).
 
 III. Analysis
 
 17
 Section 1365(d) of the Clean Water Act provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C.A. Sec. 1365(d). This section, like 42 U.S.C.A. Sec. 1988, is a statutory exception to the "American Rule" that leaves each party in a lawsuit to pay its own attorneys' fees. "[T]he rules and underlying policies for calculating attorneys' fees are the same for environmental and civil rights attorneys' fees statutes." SPIRG, 842 F.2d at 1439 n. 1 (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 557-60, 106 S.Ct. 3088, 3094-96, 92 L.Ed.2d 439 (1986)). The amount that should ultimately be awarded for attorneys' fees is within the discretion of the district court because it is better informed than an appellate court about the underlying litigation and an award of attorney fees is fact specific; but a district court should "provide a concise but clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. Moreover, "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Id.
 
 
 18
 Thus, there are at least two aspects to determining an award for attorneys' fees under section 1365(d) and similar fee shifting statutes. First, the party seeking fees must be a prevailing party in the litigation, and second, the fees to be awarded must be "reasonable." Id. at 433, 103 S.Ct. at 1939.
 
 A. Prevailing Party
 
 19
 Courts have broadly defined a "prevailing party" for purposes of triggering the application of a fee shifting statute. See id. ("A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' ") (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)); see also Metropolitan Pittsburgh Crusade for Voters v. City of Pittsburgh, 964 F.2d 244, 250 (3d Cir.1992) ("The test ... to determine prevailing party status is 'whether plaintiff achieved some of the benefit sought by the party bringing suit.' ") (quotation omitted); Ashley v. Atlantic Richfield Co., 794 F.2d 128, 134 (3d Cir.1986) ("[W]hen a plaintiff obtains 'some of the benefit sought' ... she is a prevailing party and will be entitled to a fee award unless the court finds it to be an exceptional case."). On this appeal neither PIRG nor the Air Force contends that the district court erred in deciding that PIRG is a "prevailing party." Thus, we consider only whether the district court applied the proper legal standards and did not otherwise abuse its discretion in deciding the amount that should reasonably be awarded PIRG for attorneys' fees.
 
 B. Reasonable Fees
 
 20
 In general, a reasonable fee is one which is " 'adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys.' " See SPIRG, 842 F.2d at 1448 (quoting S.Rep. No. 1011, 94th Cong.2d Sess. 6, reprinted in, 1976 U.S.C.C.A.N. 5908, 5913). In Hensley, the Supreme Court held that reasonable attorneys' fees are the product of the hours reasonably expended and the applicable hourly rate for the legal services. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. This product is called the lodestar, but the determination of the lodestar does not end the district court's inquiry. Id. at 434, 103 S.Ct. at 1940. After a district court determines the lodestar, its discretion comes into play and it can adjust the fee for a variety of reasons. The most important factor in exercising this discretion is the "results obtained" by the plaintiff.[8] Id. at 434, 103 S.Ct. at 1940.
 
 1. Hourly Rate
 
 21
 The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive. See Alan Hirsch & Diane Sheehey, Federal Judicial Center, Awarding Attorneys' Fees & Managing Fee Litigation 20 (1994); compare Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir.1985) (adopting firm's regular billing of $100 per hour for purposes of lodestar calculation), vacated on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), original decision reinstated, 807 F.2d 49 (3d Cir.1986), cert. denied, 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987) with SPIRG, 842 F.2d at 1443-45 (rejecting approach of adopting attorneys' actual billing rates for more flexible community market rate approach). In Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court stated:
 
 
 22
 The statute and legislative history establish that "reasonable fees" under Sec. 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.
 
 
 23
 Id. at 895, 104 S.Ct. at 1547. Thus determination of the market rate first requires determination of the relevant market. See SPIRG, 842 F.2d at 1448. The Air Force contends the relevant market is southern New Jersey. The district court used all of New Jersey. On this appeal PIRG did not initially object to New Jersey as the market. This Court has yet to adopt any single, authoritative definition of the "relevant community." See id. at 1442 n. 4 (reserving the question whether the market rate was the rate in the law firm's community or the rate in the community in which the case is litigated). While we have never authoritatively resolved the issue, we initially appeared to favor a definition that was based on the community in which the law firm was located as the relevant market. See In re Fine Paper Antitrust Litig., 751 F.2d at 590 ("Our premise has been that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered."); see also Cunningham, 753 F.2d at 267 ("an attorney's time is generally reflected in his normal billing rate").
 
 
 24
 In 1986, this Court appointed a task force that recommended adoption of "district-wide hourly rates for fee-setting purposes" under fee shifting statutes. See Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 260-62 (1986) (the "Task Force Report "). The Task Force Report stated:
 
 
 25
 In establishing a standardized fee schedule the court will encounter the problem of selecting hourly rates for visiting lawyers from other parts of the country litigating in its forum. The Task Force reviewed the current practices of the various circuits and concluded that the best rule is the "forum rate" rule. Hence an out-of-town lawyer would receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the forum in which the litigation is lodged. Deviation from this rule should be permitted only when the need for "the special expertise of counsel from a distant district" is shown or when local counsel are unwilling to handle the case.
 
 
 26
 Id. (footnotes omitted).
 
 
 27
 More recently, in SPIRG, we again considered how to determine an appropriate rate for an attorney's fee. In that case, two New Jersey non-profit groups brought suit under the Clean Water Act against AT & T Bell Laboratories in the United States District Court for the District of New Jersey. SPIRG, 842 F.2d at 1439. They were represented by a Washington, D.C. law firm. In calculating a fee award, the district court used the market rate for Washington, D.C. Id. at 1442. In affirming the district court, we stated:
 
 
 28
 We employ the community market rate for the District of Columbia where [counsel] has its offices rather than Newark, New Jersey where the litigation took place because the case was briefed and argued based on the D.C. market, and we have no reasonable basis for believing any differential exists between the two metropolitan markets.
 
 
 29
 Id. at 1442 n. 4.[9] In SPIRG, the relevant market was not in dispute. Id. Instead, the parties' dispute concerned use of a market rate that "significantly exceeded the firm's normal billing rates." Id. at 1442.
 
 
 30
 In Student Pub. Interest Research Group of New Jersey v. Monsanto Co., 721 F.Supp. 604, modified on other grounds, 727 F.Supp. 876 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir.1989) (table), the district court revisited the issue of the market that should be used in awarding attorneys' fees to a prevailing party under the Clean Water Act. It stated, "[t]he problem which arises ... is the location and area of the 'relevant community.' " Id. at 617. It went on to note that this Court in SPIRG had refused to give a bright line definition of the relevant community. Id. After distinguishing SPIRG,[10] the district court concluded that southern New Jersey was the appropriate legal market for calculating the fee award. Id. at 618. It relied on the Task Force Report and held there was no evidence showing a lack of New Jersey law firms capable and willing to handle the case. The court stated:
 
 
 31
 The present case is precisely the type of case in which application of the forum rate rule is not only appropriate but compelling. Plaintiffs voluntarily chose both the venue of the action and the law firm they wished to represent them therein.... Plaintiffs should not be penalized for retaining counsel of their choice, but neither should they be permitted to impose additional costs on defendants for plaintiffs' decision to go outside the district when ample competent local counsel were available.
 
 
 32
 A blanket acceptance of plaintiffs' contention that the relevant market is wherever their counsel's law firm is located provides for a slippery slope indeed. Without so much as a showing of necessity as contemplated by the Task Force plaintiffs would be free not only to retain counsel from literally anywhere in the United States, but arguably the entire world.... The forum rate rule is the most sensible method of avoiding such excesses, while allowing parties to select competent counsel of their choice.
 
 
 33
 Id. at 618-19 (citation omitted). The district court did not explain its rationale for selecting southern New Jersey as a forum market instead of the District of New Jersey.
 
 
 34
 In the present case, the magistrate judge observed that the district court served the entire State of New Jersey and that it is common practice for attorneys throughout the state to appear in the district court's Trenton vicinage. In rejecting Monsato 's use of "southern New Jersey" as a relevant marketplace, the magistrate judge noted that the parties in Monsanto had not disputed the court's selection of the southern part of the forum state as the relevant market.
 
 
 35
 The district court adopted the magistrate judge's recommendation to apply a forum wide market rate covering all of New Jersey. The Air Force contends that the district court should have followed Monsanto and used southern New Jersey as the relevant market. We review the district court's market definition to determine whether it is clearly erroneous. See Black Grievance Comm., 802 F.2d at 652. The Air Force contends that the market is either the area in which the litigation occurs, Rames v. Lamm, 713 F.2d 546, 555 (10th Cir.1983), or the locality in which the district court sits. Donnell v. United States, 682 F.2d 240, 251 (D.C.Cir.1982), cert. denied, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983). It argues that, in a state as diverse as New Jersey, no single legal service market is appropriate and the community in which the court is located should be used. We disagree. The evidence in this record shows that few southern New Jersey law firms were available that were willing to represent PIRG.[11] In addition, the record lacks any evidence from which the geographic boundaries of a southern New Jersey market for legal services could be inferred. On this record we will affirm the district court's order adopting the entire District of New Jersey as the relevant market for legal rates.[12]
 
 2. Time Charged
 
 36
 The next step in the lodestar calculation is determination of the time reasonably expended in conducting the litigation. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. A plaintiff requesting attorney fees must provide evidence supporting the time claimed. Id. The district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are "excessive, redundant, or otherwise unnecessary."[13] Id. at 433-34, 103 S.Ct. at 1939-40. Hours that would not generally be billed to one's own client are not properly billed to an adversary. Id. (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)).
 
 
 37
 The Supreme Court explored the standard of reasonableness in Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The Court considered whether time spent in regulatory proceedings was properly included in the computation of a prevailing plaintiff's award for legal services under the Clean Air Act. It held:
 
 
 38
 [T]he fact that the work done by counsel ... did not occur in the context of traditional judicial litigation does not preclude an award of reasonable attorney's fees ... for the work done during these portions of the present action.
 
 
 39
 ... [W]e [have] noted that for the time spent pursuing optional administrative proceedings properly to be included in the calculation of a reasonable attorney's fee, the work must be "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation. Application of this standard is left to the discretion of the district court.
 
 
 40
 Delaware Valley, 478 U.S. at 560-61, 106 S.Ct. at 3096 (footnote and citations omitted). In its cross-appeal, the Air Force contends that the principles of Delaware Valley and Hensley require us to vacate the district court's fee award because it failed to subtract hours that were duplicative, unnecessary or expended on efforts distinct from the litigation. In Hensley, the Supreme Court stated that a district court must "provide a concise but clear explanation of its reasons for [a] fee award." Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. The Air Force argues that the district court failed to consider its objections to specific time charges PIRG included in its petition for fees in the citizens' suit. One such objection is that the hours PIRG claims for preparing a motion for a preliminary injunction duplicate time it claimed in preparing a motion for a permanent injunction. The Air Force asserts that the memoranda in support of the motions are "quite similar" and the operative terms are essentially identical. Brief of Appellee/Cross-Appellant at 20-21. It also claims that PIRG "should have either filed a consolidated brief in support of both motions, or a short brief incorporating the points already discussed in the earlier pleading." Id. at 22.
 
 
 41
 In addition, the Air Force contends that the district court should have disallowed hours PIRG charged for preparing the requisite notice of intent to sue. It points out that the district court in Monsanto deducted the time charged in preparing the notice of intent to sue letter. See Monsanto, 721 F.Supp. at 615 ("I agree with Judge Brown that '[p]re-notice of intent to sue is analogous to investigative work and as such, is not compensable.' ") (citing SPIRG v. Anchor Thread, No. 84-320 (D.N.J. May 13, 1988)). Finally, the Air Force argues that if we allow the time PIRG charged for preparing the notice of intent to sue, the time claimed for this purpose is excessive, given opposing counsel's familiarity with the requirements of the Clean Water Act.
 
 
 42
 The magistrate judge did not consider the Air Force's objections to particular time charges. The magistrate judge was reluctant to second guess counsel's judgments about what time and attention particular legal problems should be given. Hensley, however, directs district courts to consider a party's objections to particular time charges and make their findings on the hours that should be included in calculating the lodestar. The district court failed to make any such findings here. On remand, it should consider the Air Force's particular objections in determining the hours PIRG can reasonably claim.[14]
 
 
 43
 We disagree, however, with the Air Force's contention that time spent preparing the intent to sue letter is not compensable. To the extent that the district court held otherwise in Monsanto, it is overruled. In Delaware Valley, the Supreme Court stated that a plaintiff is entitled to attorneys' fees for work that is "useful and of a type ordinarily necessary" in pursuing the litigation. Delaware Valley, 478 U.S. at 560-61, 106 S.Ct. at 3095-96. In Hallstrom v. Tillamook County, 493 U.S. 20, 31, 110 S.Ct. 304, 311-12, 107 L.Ed.2d 237 (1989), the Supreme Court held that an analogous notice of intent to sue in the Resource Conservation and Recovery Act was a jurisdictional prerequisite to suit.[15] The district court's contrary holding in Monsanto conflicts with these two cases. Thus, on remand, the district court may consider plaintiff's claims for time spent in preparing PIRG's letter of intent to sue, but it should disallow all time and rates claimed that are excessive and unreasonable. See Halderman v. Pennhurst, 49 F.3d 939 (3d Cir.1995).
 
 3. Negative Multiplier
 
 44
 Finally, we confront the district court's application of a fifty percent negative multiplier to the lodestar. PIRG contends that this was erroneous. We agree.
 
 
 45
 Reasoning that PIRG obtained injunctive relief, but failed to obtain monetary relief, the magistrate judge adopted a fifty percent negative multiplier. The magistrate judge thought Hensley afforded a district court discretion either to eliminate specific time charges from the fee claim or to reduce the overall award. Choosing the latter, the magistrate judge recommended the fifty percent reduction to reflect "results obtained."
 
 
 46
 We recognize that the Supreme Court stated in Hensley, where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436, 103 S.Ct. at 1941.[16] Thus, adjustments to the lodestar are within the discretion of the district court. Id. at 436-37, 103 S.Ct. at 1941. That discretion, however, is not unlimited. Id. at 437, 103 S.Ct. at 1941. For example, the Supreme Court specifically rejected a rough mathematical approach like the one the district court used here. It stated:
 
 
 47
 We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.
 
 
 48
 Id. at 435 n. 11, 103 S.Ct. at 1940 n. 11 (citation omitted). This case illuminates the arbitrary results of setting up a proportion based on a rough count of remedies. PIRG contends that ninety-two percent of the total hours charged against the underlying citizens' suit were spent pursuing its demand for injunctive relief. Thus, a fifty percent negative multiplier cannot achieve the twin requirements of a fair fee award, excluding unreasonable time charges and conversely providing compensation for time reasonably spent on the case as a whole. Instead, under Hensley, the district court should consider the "relationship between the extent of success and the amount of the fee award." Hensley, 461 U.S. at 438, 103 S.Ct. at 1942.
 
 
 49
 It is, however, essential to calculate the lodestar before considering adjustments. Only after the lodestar is determined does the district court have discretion to consider results obtained and, in doing so, to exclude some or all of the time spent on unsuccessful claims. Under some circumstances we have endorsed this approach. See Black Grievance Comm., 802 F.2d at 653-54; Institutionalized Juveniles v. Secretary of Pub. Welfare, 758 F.2d 897, 924-25 (3d Cir.1985). A simple, mechanistic reduction based solely on the ratio of successful to unsuccessful issues is, however, precluded by Hensley. Although the district court should consider the results obtained, it is required to do a more searching analysis than it did here before it can apply a negative multiplier.
 
 C. Services in Litigating Fee Questions
 
 50
 Finally, we briefly address PIRG's contention that the district court erred in failing to award it attorneys' fees for time spent in litigating the initial fee request. Because PIRG had received only $11.20 more than the Air Force's Rule 68 offer of $130,000, the magistrate judge recommended against a fee award for any time spent in litigating the fee issue. We have concluded, however, that the magistrate judge's calculation of the underlying fee award against which the Rule 68 offer was compared was in error. We remind the parties, however, that the matter of attorneys' fees is ancillary and collateral to the underlying controversy. Thus, they should refrain from making it a major controversy.
 
 
 51
 We have previously held that legal services rendered in a dispute over the attorneys' fees due a prevailing plaintiff are recoverable under a fee shifting statute. See Black Grievance Comm, 802 F.2d at 656-57 (citing Durett v. Cohen, 790 F.2d 360, 363 (3d Cir.1986); Prandini v. National Tea Co., 585 F.2d 47, 54 (3d Cir.1978)). We have also indicated that district courts should separately analyze each fee in accord with Hensley's standards. Id. at 657 ("The fee petition litigation, however, is 'a separate entity subject to lodestar and Hensley reduction analysis.' ") (quoting Institutionalized Juveniles, 758 F.2d at 924). Thus, on remand the district court should calculate a lodestar for legal services in the fee dispute. In determining the reasonableness of the rates claimed for services in litigating the fee dispute, the court should consider whether these services require the same quality of expertise and skill as the underlying dispute. Thereafter, the court should separately consider what adjustments, if any, should be made to PIRG's claim for counsel's services in litigating the fee dispute, including any appropriate adjustment for PIRG's conduct in continuing to litigate the fee issue after refusing the Air Force's Rule 68 settlement offer.
 
 IV. Conclusion
 
 52
 We will affirm the district court's use of the District of New Jersey as the relevant market. We will vacate its order awarding fees of $130,011.21 for legal services and costs incurred in the underlying citizens' suit. We will also vacate its order denying PIRG fees for legal services rendered in connection with the fee dispute itself, and remand this case for further proceedings consistent with this opinion. Each party shall bear its own costs.
 
 
 
 [1]
 The lodestar is the product of the hours reasonably expended and the hourly rate for legal services in the applicable market. See Part III(B), infra
 
 
 [2]
 The Environmental Protection Agency ("EPA") first issued an NPDES permit to the Air Force in 1976. It authorized the Air Force to discharge various substances into Crosswicks Creek. It expired on June 30, 1982 but remained in effect until the state issued its permit. On August 1, 1989, the New Jersey Department of Environmental Protection, acting on authority delegated by the EPA, issued a new permit to the Air Force. It was effective November 1, 1989. See Public Interest Research Group of New Jersey v. Rice, 774 F.Supp. 317, 319 (D.N.J.1991)
 
 
 [3]
 PIRG also sought restitution for any environmental damage caused by the Air Force. The complaint does not expressly demand restitution, but documents filed during settlement negotiations show that PIRG sought an order directing the Air Force to make restitution for environmental damage
 
 
 [4]
 The consent order controls the United States Army's permits for discharges from Fort Dix, New Jersey
 
 
 [5]
 In an earlier agreement the Air Force had agreed to construct a wastewater treatment facility for McGuire Air Force Base. It failed to comply with that agreement
 
 
 [6]
 Rule 68 provides:
 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
 Fed.R.Civ.P. 68.
 
 
 [7]
 This conflicts with the district court's earlier conclusion that the relief PIRG received was substantially broader than the relief the EPA secured in the consent order entered in that case. See Public Interest Research Group of New Jersey, Inc., 774 F.Supp. at 326-27. We agree with the district court
 
 
 [8]
 The factors commonly considered are set out in the United States Court of Appeals for the Fifth Circuit's opinion in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). They include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of alternative employment; (5) the customary fee for similar work; (6) the nature of the fee payment arrangement; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) fee awards in similar cases. Id. A number of these factors, however, are subsumed in the lodestar calculation. Hensley, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940
 
 
 [9]
 In its initial brief, PIRG did not contest the district court's use of the District of New Jersey as the relevant market. However, in responding to the Air Force's contention that the district court's adoption of this community is erroneous, PIRG contends that this Court's precedents require use of the rate in the community where the law firm is located. Neither a task force report nor a subsequent panel can overrule a published opinion of this Court. See I.O.P. 9.1 (only the Court sitting in banc may overrule an earlier published opinion of this Court). In support of its position, PIRG claims that our earlier case law established a rule that the market rate of the community in which the law firm is located is the relevant market. See In re Fine Paper Antitrust Litig., 751 F.2d at 590. We do not agree with PIRG's contention that earlier case law establishes a per se rule in favor of the market rate for the community in which the law firm is located. Indeed, we think these cases eschew any rigid rule. Moreover, PIRG's initial failure to raise this issue reinforces our decision to reject the use of the inflexible rule it advances on the facts of this case
 
 
 [10]
 The district court stated:
 The court's decision to apply Washington, D.C. rates in SPIRG v. AT & T can be explained by four major factual distinctions from the instant case. First, both plaintiffs and defendants were represented by Washington, D.C. law firms. Second, the case was "briefed and argued based on the D.C. market." Third, the court could find "no reasonable basis for believing any differential existed between the two metropolitan markets" because the district court, which sat in Newark, New Jersey, had not been provided with data as to market rates prevailing in northern New Jersey. Fourth, and perhaps most significantly, there was apparently no objection made by the defendant to the plaintiffs' Washington, D.C. "market rate" proofs.
 Monsanto, 721 F.Supp. at 617-18 (citing SPIRG, 842 F.2d at 1442 n. 4).
 
 
 [11]
 PIRG submitted three affidavits supporting its claim that no New Jersey lawyers would be willing to represent them on a contingency fee basis. The Air Force submitted two affidavits from New Jersey lawyers stating that they were available for environmental litigation in federal courts
 
 
 [12]
 Determination of the hourly rate for legal services in the applicable marketplace is a finding of fact that can be reversed only if it is clearly erroneous. The district court's finding in this respect is not seriously disputed
 
 
 [13]
 It is the duty of the party seeking fees to exclude such hours from its initial calculation of the total hours expended. Hensley, 461 U.S. at 434, 103 S.Ct. at 1940
 
 
 [14]
 The district court seems to have thought that its negative multiplier made attention to the Air Force's specific objections unnecessary. Hensley does not permit such a short cut. See infra Part III.B.3
 
 
 [15]
 Citizen-plaintiffs are required to give sixty days notice of their intent to bring suit. 33 U.S.C.A. Sec. 1365(b)(1)(A) (West 1986). This notice provision is a jurisdictional prerequisite. See Hallstrom v. Tillamook County, 493 U.S. 20, 31, 110 S.Ct. 304, 311-12, 107 L.Ed.2d 237 (1989) (notice provision for citizen suit under Resource Conservation and Recovery Act); National Envtl. Found. v. ABC Rail Corp., 926 F.2d 1096 (11th Cir.1991) (Powell, J., sitting by designation) (applying Hallstrom to the notice provision of the Clean Water Act)
 
 
 [16]
 On appeal, PIRG first contends that its claims for injunctive relief and monetary penalties are distinct and unrelated claims and that it is entitled to all of its fee for the hours expended in seeking injunctive relief. We disagree with PIRG. We think that PIRG's claims for injunctive relief and monetary penalties arose from a common basis of facts and thus cannot be considered as unrelated. See Hensley, 461 U.S. at 434-35, 103 S.Ct. at 1940-41