UNITED STATES of America, Plaintiff,

v.

MAINE DEPARTMENT OF TRANSPORTATION, Bridgecorp, f/k/a Bridge Construction Corp., Robert Wardwell & Sons, Inc., and T.Y. Lin International, successor to Hunter Ballew Associates, Defendants,

and

Sierra Club and Conservation Law Foundation, Plaintiff–Intervenors.

Civ. No. 96–0249–B.

United States District Court, D. Maine.

Sept. 17, 1997.

Daniel W. Pinkston, U.S. Dept. of Justice, Environmental Defense Section, Washington, DC, for Plaintiff USA.

James T. Kilbreth, Verill & Dana, Portland, ME, for Maine Dept. of Transp.

Edward F. Lawson, Weston, Patrick, Willard & Redding, Boston, ME, Jeffrey A. Thaler, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for Sierra Club.

Daniel L. Sosland, Conservation Law Foundation, Rockland, ME, for Conservation Law Foundation.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Defendant, Maine Department of Transportation ("Maine DOT"), brings this Motion to Dismiss an application for attorneys' fees and costs brought by Plaintiff–Intervenors, the Sierra Club and the Conservation Law Foundation ("CLF"), pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1365(d). For the reasons set forth below, Defendant's Motion is granted. Since the Court holds that the Sierra Club and CLF are not entitled to recover attorneys' fees and costs under 33 U.S.C. § 1365(d), it does not reach the issue of whether or not the Eleventh Amendment bars any such award.

## I. BACKGROUND

On July 18, 1994, the Sierra Club and CLF sent 60–day notice of intent to sue letters [1] to

---

1. 33 U.S.C. § 1365(b)(1) provides that no citizen may bring a suit under subsection (a)(1) of § 1365:
 (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

Defendants Maine DOT, Robert Wardwell & Sons, Inc. ("Wardwell Construction"), Bridge Construction Corp. ("Bridge Construction"), and T.Y. Lin International ("T.Y. Lin"), formerly Hunter Ballew Associates,[2] alleging various violations of the Clean Water Act in connection with the construction of an access road and terminal site on Sears Island. The letters advised Defendants that in the course of constructing the access road and terminal site they had illegally altered and filled wetlands on Sears Island. Plaintiff–Intervenors also sent a copy of the 60–day notice letter to the Environmental Protection Agency ("EPA").

Rather than commencing a civil enforcement action against Defendants prior to the expiration of the 60–day notice deadline, the United States of America ("United States") entered into settlement discussions with Defendants, the Sierra Club, and CLF. These negotiations lasted until November 1996. To ensure that the statute of limitations would not expire during these discussions, the parties entered into a Tolling Agreement, which was extended repeatedly as necessary.

On November 13, 1996, the United States filed a civil enforcement action against Defendants in this Court pursuant to 33 U.S.C. § 1319. On the same day, the United States filed a Consent Decree with the Court to which the United States, Defendants, the Sierra Club, and CLF were parties. Also on the same day, the Sierra Club and CLF moved to intervene, without filing a complaint, in the United States' enforcement suit. This motion was unopposed.

The Court approved the Consent Decree on April 9, 1997. The Decree requires Defendant Maine DOT to restore 3.2 acres of wetlands at the cargo terminal site on Sears Island, restore and enhance a 0.75 acre wetland on south-central Sears Island, provide streambank stabilization and wetlands enhancement at Dyer Creek in North Newcastle, Maine, and expend at least $ 100,000 on the acquisition and conservation of Atlantic Salmon habitat on the Ducktrap River. The

Consent Decree further requires Defendants to pay a $10,000 civil penalty.

On May 7, 1997, the Sierra Club and CLF filed an application to recover costs and attorneys' fees from Defendants pursuant to 33 U.S.C. § 1365(d). Plaintiff–Intervenors contend that they are "prevailing parties" under 33 U.S.C. § 1365(d), entitled to recover attorneys' fees and costs from the date of the 60–day notice of intent to sue letters. Plaintiff–Intervenors further contend that any such award of fees and costs is not barred by the Eleventh Amendment. Maine DOT moved to dismiss this application,[3] arguing that Plaintiff–Intervenors are not "prevailing parties" in an action brought under section 1365, and that even if the Sierra Club and CLF are entitled to attorneys' fees and costs under subsection 1365(d), any such award is barred by the Eleventh Amendment.

## II. DISCUSSION

■ A prevailing party is generally not entitled to recover attorneys' fees in the absence of a statute which allows such an award. *Alyeska Pipeline Service Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Natural Resources Defense Council, Inc. v. Environmental Protection Agency,* 484 F.2d 1331, 1332 (1st Cir.1973). Plaintiff–Intervenors seek to recover attorneys' fees and costs pursuant to the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365. Subsection 1365(d) provides that:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d).

■ Defendant Maine DOT argues that under the plain language of this section, Plaintiff–Intervenors are not entitled to recover attorneys' fees and costs. Subsection

---

**2.** The Sierra Club also sent the same 60–day notice letter to Normandeau Associates, Inc.; however, Normandeau Associates, Inc. is not a defendant in this lawsuit.

**3.** Defendants Bridge Construction, Wardwell Construction, and T.Y. Lin also join in Maine DOT's objection to Plaintiff–Intervenors' application for attorneys' fees and costs.

1365(d) unambiguously authorizes an award of fees only "in any action brought pursuant to this section." (emphasis added). Plaintiff–Intervenors never brought an action pursuant to 33 U.S.C. § 1365. Instead, after sending 60–day notice letters to Defendants and EPA, Plaintiff–Intervenors participated in settlement discussions with the other parties and intervened in the United States' civil enforcement suit brought pursuant to 33 U.S.C. § 1319. As a result, Plaintiff–Intervenors' fee application falls outside of the statutory authorization of fees in subsection 1365(d).

In addition, Plaintiff–Intervenors are not "prevailing or substantially prevailing" parties as required by subsection 1365(d). Parties are considered "prevailing parties" for the purposes of attorneys' fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978) (interpreting the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988); *Public Interest Research Group of New Jersey. Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir.1995) (interpreting 33 U.S.C. § 1365(d)). Not only did Plaintiff–Intervenors never litigate under section 1365, but in addition, Plaintiff–Intervenors did not seek any additional relief beyond that sought by the United States when they intervened in the United States' enforcement action. While Plaintiff–Intervenors did participate in settlement discussions, it is the United States, not Plaintiff–Intervenors, that "prevailed" in this litigation. *See United States v. Hooker Chemicals & Plastics Corp.,* 591 F.Supp. 966, 968 (W.D.N.Y.1984) (rejecting intervenors' claim for attorneys' fees where their participation did not result in any change to the settlement agreement).

The policy considerations underlying the citizen suit provision of the Clean Water Act further support a denial of Plaintiff–Intervenors' fee application. The requirement that a citizen file a letter of intent to sue sixty days before bringing a private enforcement action indicates that Congress intended citizen suits under 33 U.S.C. § 1365 to "supplement rather than to supplant gov-

ernmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987). The Supreme Court has noted that "citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.' " *Id.* (quoting S.Rep. No. 92–414, at 64 (1971), *reprinted in* 2 A Legislative History of the Water Pollution Control Act Amendments of 1972, at 1482 (1973)).

The evidence demonstrates that the United States exercised its enforcement responsibility. Within a few weeks after receiving Plaintiff–Intervenors' 60–day notice letter, the EPA referred the case to the Department of Justice, which, in turn, met with Defendants and Plaintiff–Intervenors to discuss settlement negotiations. In order to ensure that the statute of limitations would not expire before these negotiations concluded, the United States and all of the other parties agreed to a Tolling Agreement. The First Circuit has held that the primary purpose of fee awards under the Clean Water Act is not punishment, but the promotion of citizen enforcement. *See Roosevelt Campobello Int'l Park Comm'n v. United States Environmental Protection Agency,* 711 F.2d 431, 434 (1st Cir.1983) (citing *Natural Resources Defense Council v. Environmental Protection Agency,* 484 F.2d 1331, 1338 (1st Cir.1973)). Since there was no need for citizen enforcement in this case, there is no basis for an award of attorneys' fees.

Plaintiff–Intervenors put forth three arguments in favor of a fee award. First, Plaintiff–Intervenors contend that the filing of a 60–day notice letter constitutes commencing an "action" under section 1365. The three cases Plaintiff–Intervenors cite, however, are factually distinct from the current case. In *Student Public Interest Research Group v. Monsanto Co.,* 721 F.Supp. 604, 615 (D.N.J. 1989), the court held that the Clean Water Act's statutorily mandated 60–day notice letter provision constituted the beginning of the litigation for purposes of calculating an award of attorneys' fees. After filing a 60–day notice letter, however, the public interest groups in *Monsanto* commenced a lawsuit against the defendant pursuant to 33 U.S.C.

§ 1365, and litigated for several years while the EPA took no action. *Id.* at 608. In contrast, here, the EPA took action soon after receiving the 60–day notice letter, and Plaintiff–Intervenors never commenced their own enforcement action.

Similarly, in *Public Interest Research Group of New Jersey. Inc. v. Windall,* 51 F.3d 1179, 1181 (3d Cir.1995), public interest groups brought a private enforcement action pursuant to 33 U.S.C. § 1365 against the Air Force, alleging violations of the National Pollutant Discharge Elimination System and New Jersey Pollutant Discharge Elimination System permits at McGuire Air Force Base. While the plaintiffs' suit was pending, the Air Force and EPA agreed to a consent order in a separate action filed by the EPA. The plaintiffs continued their lawsuit, however, and ultimately obtained additional relief against the Air Force. *Id.* at 1182. The court held that on remand the district court could consider the plaintiffs' claims for attorneys' fees for time spent preparing the notice letter. Id. at 1189. Indeed, the court overruled the district court's decision in *Monsanto* to the extent that the court in that case had refused to find time spent preparing notice letters compensable.[4] *Id.* Again, however, unlike the current case, the plaintiffs in *Windall* actually commenced an action under 33 U.S.C. § 1365, seeking and achieving relief beyond that sought and achieved by the EPA.

Plaintiff–Intervenors also cite *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), in support of their argument that the filing of a 60–day notice letter constitutes commencement of a citizen suit under section 1365. In *Pennsylvania,* the Supreme Court analyzed the analogous citizen suit fee provision of the Clean Air Act, 42 U.S.C. § 7604(d), and held that the plaintiff citizens group could recover attorneys' fees for its efforts to enforce a consent decree obtained after the group and the United States each filed suit to force the Commonwealth of Pennsylvania to implement an emissions inspection and maintenance program that satisfied the requirements of the Clean Air Act. *Id.* at 549, 106 S.Ct. at 3090. The Supreme Court reasoned that enforcement of the full scope of relief provided by the Consent Decree could not "be divorced from the matters upon which Delaware Valley prevailed in securing the consent decree." *Id.* at 559, 106 S.Ct. at 3095. Here, Plaintiff–Intervenors did not "prevail" in enforcement litigation or enforce the terms of the Consent Decree. Indeed, in holding that subsection 7604(d) applied to administrative as well as judicial proceedings, the Supreme Court distinguished the case before it from a case involving federal administrative proceedings "when there is no connected court action in which fees are recoverable." *Id.* at 560 n. 5, 106 S.Ct. at 3096 n. 5 (expressly reserving judgment in the latter situation).

Certainly, Plaintiff–Intervenors played an important role in motivating the United States to exercise its enforcement responsibility in this case. The Court is persuaded, however, that after receiving the 60–day notice letter from Plaintiff–Intervenors, the government exercised this responsibility diligently. Had Plaintiff–Intervenors believed that the government's actions were inadequate, they could have brought their own citizens' suit, or filed a complaint when they intervened in the United States' enforcement action.[5] Plaintiff–Intervenors are not, howev-

---

4. Upon a motion for reconsideration, the *Monsanto* court concluded that plaintiffs were "entitled to attorneys' fees for their fee petition work, subject to certain reductions" *Student Public Interest Research Group of New Jersey v. Monsanto Co.,* 727 F.Supp., 876, 885 (D.N.J.1989).

5. The Court declines to address the issue of whether, as Defendant Maine DOT appears to suggest, a plaintiff may ever recover attorneys' fees and costs for work performed prior to the filing of an action under section 1365. The Third Circuit's holding in *Windall* provides support for the argument that where a citizens group has actually commenced an enforcement action, time spent preparing the 60–day notice letter is compensable. 51 F.3d at 1189. While the First Circuit has not directly addressed this issue, in *Roosevelt Campobello Int'l Park Comm'n v. Environmental Protection Agency,* 711 F.2d 431, 438 (1st Cir.1983), the First Circuit held that a prevailing citizens group could only recover attorneys' fees under the Clean Water Act for work done in judicial proceedings, not administrative proceedings. As discussed in the text above, however, the Supreme Court in *Pennsylvania*

er, entitled to recover attorneys' fees under subsection 1365(d) solely for aiding in the government's enforcement efforts. Without the need for citizen enforcement, Plaintiff–Intervenors' case for attorneys' fees and costs is significantly weakened.

Alternatively, Plaintiff–Intervenors contend that because 33 U.S.C. § 1365(b)(1)(B) authorized them to intervene in the government's section 1319 enforcement suit, their intervention constitutes an "action" under section 1365. In support of their argument, Plaintiff–Intervenors cite two related cases arising under the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. §§ 6901 *et seq.,* in which the court, interpreting the citizen suit provision of the SWDA, allowed a fee award to a citizens group that intervened in an enforcement case brought by the United States. *See United States (EPA) v. Environmental Waste Control. Inc,,* 710 F.Supp. 1172, 1247 (N.D.nd.1989), *aff'd,* 917 F.2d 327 (7th Cir.1990); *United States (EPA) v. Environmental Waste Control. Inc.,* 737 F.Supp. 1485, 1491 (N.D.Ind.1990) (adopting relevant portions of its March 29, 1989 opinion).

Plaintiff–Intervenors' contention is not persuasive. First, unlike Plaintiff–Intervenors in this case, the citizens group in *Environmental Waste Control* both joined in the EPA's claims against the defendants, and brought its own claims against the defendants. *Environmental Waste Control,* 710 F.Supp. at 1181. Second, as the *Environmental Waste Control* court noted, the SWDA does not require a 60–day notice period when the alleged violation involves hazardous waste management, as it did in the cases before it.[6] The court observed that the rationale behind a 60–day notice provision is to allow the government an opportunity to act, thereby removing the need for citizen enforcement. *See id.* at 1190. While the primacy of the government's enforcement role was not, therefore, a factor in the *Environmental Waste Control* court's decision, it

is an important consideration in the current case.

 In addition, as Defendant Maine DOT correctly contends, the plain language of section 1365 is contrary to the allegation that intervention in a United States enforcement action pursuant to section 1319 constitutes an "action" under subsection 1365(d). Subsection 1365(b)(1)(B) prohibits citizen suits under section 1365 "if the Administrator ... has commenced and is diligently prosecuting a civil or criminal action ... but in any such action ... any citizen may intervene as a matter of right." This language indicates that Congress recognized that a private enforcement action brought pursuant to section 1365 is distinct from an action brought by the Administrator pursuant to section 1319.

Finally, Plaintiff–Intervenors argue that they are entitled to a fee award in this case because the First Circuit has generally interpreted statutes authorizing fee awards, such as section 1365, broadly. Plaintiff–Intervenors rely on two cases in support of this contention, *Natural Resources Defense Council v. Environmental Protection Agency,* 484 F.2d 1331 (1st Cir.1973) ("NRDC I"), and *Roosevelt Campobello Int'l Park Comm'n v. United States Environmental Protection Agency,* 711 F.2d 431 (1st Cir. 1983). The Court is not persuaded by Plaintiff–Intervenors' argument.

In *NRDC I,* the court held that under the Clean Air Act, a petition for review brought pursuant to section 307 of the Act, 42 U.S.C. § 7607, could be considered a suit "brought pursuant to" the citizen suit provision, section 304, 42 U.S.C. § 7604(d), for attorneys' fees purposes. 484 F.2d at 1336. Since the court did not find the statutory language of sections 304 and 307 determinative, the court based its decision on the legislative history of the Clean Air Act and common sense. The court found that the legislative history of the Act indicated that section 307 merely ap-

took a contrary position in interpreting the analogous provision of the Clean Air Act.

**6.** 42 U.S.C. § 6972(b)(1) provides:

No action may be commenced under subsection (a)(1)(A) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation ... *except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter* ; .... (emphasis added).

pointed a circuit court rather than a district court as the forum for certain suits authorized by the Clean Air Act. The court further held that there was no reason to treat actions brought in the circuit court any differently from actions brought in the district court for purposes of attorneys' fees. *Id.* at 1336–1338. Thus, rather than taking an expansive view of the fee provision in the Clean Air Act, the court held that it believed "Congress specifically intended that proceedings brought pursuant to § 307, ..., were to be entitled to the benefits and deterrents expressed in § 304(d) via § 304(a)." *Id.* at 1338.

In *Roosevelt Campobello Int'l Park Comm'n,* the First Circuit followed its reasoning in *NRDC I,* and held that a petition for review under the analogous section of the Clean Water Act, 33 U.S.C. § 1369, constituted an "action brought pursuant to" the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365. 711 F.2d at 437. In reaching its decision, the *Roosevelt* court specifically discussed the need to conform to the Supreme Court's holding in *Alyeska,* 421 U.S. at 247, 95 S.Ct. at 1616 where the Supreme Court held that it was inappropriate to award attorneys' fees to a prevailing party absent a statutory basis for the award. *Id.* at 435. Although section 1369 did not, at the time, contain an express statutory basis for fee awards,[7] the *Roosevelt* court found the requirements of *Alyeska* satisfied in light of a congressional statement of intent made in connection with the 1977 Amendments to the Clean Air Act, in which Congress added an express authorization of fees to the section governing petitions of review under the Clean Air Act. *Id.* at 436.

In this case, Plaintiff–Intervenors have not presented anything in the legislative history of sections 1365 or 1319 that would support their broad interpretation of section 1365. Moreover, common sense dictates that Plaintiff–Intervenors' interpretation be rejected. Unlike section 1369, which just provides an alternate forum for certain suits authorized by the Clean Water Act, section 1319 creates an entirely distinct cause of action for the Administrator. Plaintiff–Intervenors' inter-

vention in this distinct action, without more, does not constitute a citizen suit under section 1365.

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff–Intervenors' application for attorneys' fees and costs is GRANTED.

*SO ORDERED.*

---

**7.** 33 U.S.C. § 1369 was amended in 1987 to include an express authorization of fees.