**LOCAL UNION NO. 1992 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Plaintiff,**

v.

**The OKONITE COMPANY, Defendant.**

No. Civ.A. 97–2041 (AJL).

United States District Court,
D. New Jersey.

Dec. 8, 1998.

---

Montalbano, Kenilworth, New Jersey, for plaintiff.

Richard Delello, Grotta, Glassman & Hoffman, Roseland, New Jersey, for defendant.

## OPINION

LECHNER, District Judge.

Presently pending is the application of Local Union No.1992 of the International Brotherhood of Electrical Workers (the "Union") for attorneys' fees (the "Application for Attorneys' Fees").[1] Plaintiff requests attorneys' fees and costs totaling $105,581.00. For the reasons set forth below, the Application for Attorneys' Fees is granted in part and denied in part. The Union is awarded attorneys' fees in the amount of $68,118.90.

*Background*

The Union filed a complaint (the "Complaint") against The Okonite Company ("Okonite") on 21 April 1997. The Complaint contained two counts. In Count One, the Union alleged Okonite violated the Worker Adjustment and Retraining Notification Act (the "WARN Act"),[2] 29 U.S.C. § 2101 *et seq.*, by failing to provide notice to certain effected employees of the closing of its North Brunswick, New Jersey facility sixty days in advance of the termination of the effected employees. *See* Complaint. In Count Two, the Complaint alleged Okonite violated the WARN Act by failing to provide notice sixty days in advance of an alleged mass-layoff which occurred between 1 January 1995 and 8 July 1996, before the New Brunswick facility was closed. *See id.* The Union sought recovery of damages for Union members in the form of pay in lieu of WARN Act notice, prejudgment interest on damages pursuant

Paul Allen Montalbano, Schneider, Goldberger, Cohen, Finn, Solomon, Leder &

---

1. In support of the Application for Attorneys' Fees, the Union Submitted:

 (1) Letter Brief, dated 9 July 1998 (the "Moving Brief");

 (2) Affidavit of Ronnie Gardstein in Support of Plaintiff's Application for Attorney's Fees with attached exhibits (the "Gardstein Aff.");

 (3) Affidavit of David Jones, III;

 (4) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Application for an Award of Attorney's Fees (the "Reply Brief"); and

 (5) Reply Affidavit of Ronnie Gardstein (the "Gardstein Reply Aff.").

In opposition to the Application for Attorneys' Fees, Okonite submitted: Defendant's Memorandum of Law in Opposition to Plaintiff's Application for Attorney's Fees (the "Opposition Brief").

2. The WARN Act requires companies with one hundred employees or more to provide workers with a minimum of sixty days written notice before a mass layoff or plant closing. *See* 29 U.S.C. § 2102(a). Employers who fail to provide the required notice must compensate employees suffering an employment loss for each day of the violation. *See* 29 U.S.C. § 2104(a).

to 29 U.S.C. § 1961 and an award of attorneys' fees and costs. *See id.*, pp. 4–5, 6–7.

In a letter opinion and order, dated 18 June 1998 (the "18 June 1998 Opinion"), summary judgment was granted in favor of the Union. Pursuant to the 18 June 1998 Opinion, the Union request for attorneys' fees was granted. *See* 18 June 1998 Opinion at 55. Counsel for the Union were directed to submit a detailed, itemized affidavit concerning the requested attorneys' fees. *See id.* Okonite was provided an opportunity to present opposition to this request. *See id.*

■ On 9 July 1998, the Union submitted the Application for Attorneys' Fees. On 28 July 1998, judgment in this matter was stayed pending appeal. *See* 28 July 1998 Order. A District Court, at its discretion, may consider an application for attorneys' fees during the pendency of an appeal. *See West v. Keve*, 721 F.2d 91, 95 n. 5 (3d Cir. 1983) ("Should the district court prefer to consider a fee application during a pending appeal on the predicate case, the district court is not divested of jurisdiction to determine the application."); *Bygott v. Leaseway Transp. Corp.*, 637 F.Supp. 1433, 1438 (E.D.Pa.1986).

## Discussion

### A. *The Lodestar Amount*

■ Under the traditional "American Rule," litigants are required, in the absence of legislation providing otherwise, to bear their own costs. *See Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–60, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Section 2104(a)(6) of the WARN Act, however, provides, in any action brought pursuant to the statute, "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee." *See* 29 U.S.C. § 2104(a)(6) ("Section 2104(a)(6)"). Pursuant to Section 2104(a)(6) the 18 June 1998 Opinion granted the Union request for reasonable attorneys' fees.

■ "A reasonable fee is one which is 'adequate to attract competent counsel, but which does not produce windfalls to attorneys.'" *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179,

1185 (3d Cir.1995) ("PIRG") (quoting *Student Pub. Interest Research Group of New Jersey, Inc. v. AT & T Bell Lab.*, 842 F.2d 1436, 1448 (3d Cir.1988)) ("SPIRG"). The starting point for determining the reasonableness of a fee is to calculate the "lodestar amount." *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The lodestar amount is the number of hours reasonably expended multiplied by a reasonable hourly rate. *See id.; Pennsylvania Env't'l Defense Foundation v. Canon–McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir.1998) ("PEDF"); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir.1996); *PIRG*, 51 F.3d at 1185.

■ The party requesting fees bears the burden of demonstrating the request is reasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). A District Court cannot decrease a fee award based upon factors not raised at all by the adverse party. *See id.* Once the adverse party raises specific objections to the fee request, however, the district court has discretion to adjust the award in light of those objections. *See id.*

### 1. *Reasonableness of Rates*

■ The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community. *See Blum v. Stenson*, 465 U.S. 886, 895–96 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Washington*, 89 F.3d at 1035. The starting point in determining the appropriate hourly rate is the attorneys' usual billing rate. *See PEDF*, 152 F.3d at 231; *PIRG*, 51 F.3d at 1185. The usual billing rate, however, is not dispositive of the issue of reasonableness. *See, e.g., Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *PIRG*, 51 F.3d at 1185.

■ "In determining a reasonable hourly rate, the court should assess the skill and experience of the prevailing attorneys and compare their rates to the rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blakey*, 2 F.Supp.2d at 602. The party requesting the payment of attor-

neys' fees bears the burden of establishing by way of satisfactory evidence, "in addition to the attorney's own affidavits, that the requested hourly rates meet this standard." *Washington,* 89 F.3d at 1035; *see also Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541.

In the instant matter, Counsel for Plaintiff contracted with the Union for an hourly rate of $160.00 for all attorneys and $60.00 for all law graduates and law clerks. *See* Gardstein Aff. at ¶ 8. The Union, however, seeks an award based upon the following hourly rates:

| | | |
|---|---|---|
| Ronnie Gardstein | (Lead Counsel) | $250.00/hour |
| Paul Montalbano | (Partner) | $250.00/hour |
| Edward Cohen | (Partner) | $250.00/hour |
| Lisa Bernt | (7th yr.Assoc.) | $175.00/hour |
| Robert C. Gifford | (5th yr.Assoc.) | $160.00/hour |
| Michael Weber | (Law Graduate) | $ 80.00/hour |
| Nadine Duhamel | (Law Clerk) | $ 80.00/hour |
| Vicki Pagidas | (Law Clerk) | $ 80.00/hour |
| Jeff Schioppa | (Law Clerk) | $ 80.00/hour. |

*Id.* at ¶ 9. The Union asserts these rates are reasonable and consistent with rates prevailing in the community. *See id.* at ¶ 10; Reply Brief at 6–9.

Okonite contends the Union should be limited to the actual rates charged. *See* Opposition Brief at 4. Okonite argues the Union has failed to present evidence of the average hourly rate charged by plaintiff's labor law firms to properly support its request for higher billing rates. *See id.* at 3–4. Okonite further argues evidence of rates charged by defense firms presented by the Union is an improper basis for comparison. *See id.* (citing *Public Interest Research Group of New Jersey v. Stone,* 156 F.R.D. 568, 572 (D.N.J. 1994); *Blakey v. Continental Airlines, Inc.,* 2 F.Supp .2d 598 (D.N.J.1998)).

The Union argues the requested attorneys' fees are not limited to the amount it established by contract with counsel. *See, e.g., Blanchard v. Bergeron,* 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (statutes providing for reasonable attorney's fee not necessarily limited to contract price). The Union further argues the fact the fee arrangement between it and its attorneys provided for lesser hourly rates should not serve as a bar to recovering higher hourly rates.

The fee quoted to a client, however, " 'is helpful in demonstrating the attorney's fee expectations when he [or she] accepted the case.' " *Blanchard,* 489 U.S. at 93, 109 S.Ct. 939 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 723, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)). *Blanchard* contemplates deviation from the original fee agreement only if the original agreement provides a less than reasonable fee. *See Blanchard,* 489 U.S. at 93, 109 S.Ct. 939. Such deviation has been found appropriate primarily in the context of contingent fee agreements, *see, e.g., id.,* and matters involving representation by a public interest law firm. *See, e.g., id.* (citing *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444, 1974 WL 180 (C.D.Cal.1974)); *Blum,* 465 U.S. at 895, 104 S.Ct. 1541; *SPIRG,* 842 F.2d at 1445.

In the instant matter, the Union does not argue the originally contracted rate is not reasonable. *See* Moving Brief; Reply Brief. The instant matter, therefore, is distinguishable from cases in which a plaintiff is represented for free by a public interest law firm or in which a contingency fee fails to adequately provide for an attorney's reasonable fees.[3] The argument of the Union is, essentially, that its counsel would be capable of charging a higher rate in the current market place. While this may be true, it does not render the original contractually agreed upon fee arrangement unreasonable.

In the absence of proof the original fee arrangement was unreasonable, the Union and its attorneys will be held to their original contract. This is consistent with the

---

**3.** The instant matter is also distinguishable from cases in which a district court was found to have erred in limiting a fee award to the amount billed. For example, in *Gulfstream III Assoc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir.1993), the Circuit held it was error for the district court to limit an award of fees to the contractual obligation. The Circuit, however, based its conclusion on the fact the client had agreed to pay an amount, in settlement, substan-

tially less than the attorney's usual billing rate. *See id.* at 421. The *Gulfstream III* court did not dispute the fact, in most cases, the agreed upon billing rate of a firm reflects a reasonable rate. *See id.* In the instant matter, the contractual rate will govern not only because it represents the agreement between the Union and its Counsel, but because it also reflects a reasonable rate under the circumstances.

goal of preventing attorneys from seeking a windfall in a request for fees. *See, e.g., Blanchard,* 489 U.S. at 92 n. 6, 109 S.Ct. 939 (citing S.Rep. No. 94–1011, p. 6 (1976)) (fees should be adequate to attract counsel, but should not produce a windfall to the attorneys). Accordingly, Counsel for the Union will be compensated at the reasonable rates of $160 per hour for all attorney work and $60 per hour for all law graduate and law clerk [4] work.

### 2. *Reasonable Hours*

■■■■ The next step in the lodestar calculation is determination of the time reasonably expended in conducting the litigation. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *PIRG,* 51 F.3d at 1188. A party requesting attorneys' fees must provide evidence supporting the time claimed. *See Washington,* 89 F.3d at 1037 ("[A] fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."). A district court must review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *Rode,* 892 F.2d at 1183.

■■■■ Compensation is not due for unproductive time. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Time expended is reasonable if the work done was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 560–61, 106 S.Ct. 3088, 92 L.Ed.2d 439; *PIRG,* 51 F.3d at 1188.

In the instant matter, Plaintiff requests payment for the following time expenditures:

| | | | |
|---|---|---|---|
| Ronnie Gardstein | (Lead Counsel) | 323.1 | hours |
| Paul Montalbano | (Partner) | 16.45 | hours |
| Edward Cohen | (Partner) | 2.25 | hours |
| Lisa Bernt | (7th yr.Assoc.) | 15.1 | hours |
| Robert C. Gifford | (5th yr.Assoc.) | 54.0 | hours |
| Michael Weber | (Law Graduate) | 29.0 | hours |
| Nadine Duhamel | (Law Clerk) | 7.3 | hours |
| Vicki Pagidas | (Law Clerk) | 40.7 | hours |
| Jeff Schioppa | (Law Clerk) | 1.0 | hours |

---

4. Law clerk work will be compensated at a rate of $60 per hour, although this appears to be at

| | | |
|---|---|---|
| Total | 488.9 | hours. |

Gardstein Aff. at ¶ 20. Descriptive time entries were submitted in support of the Application for Attorneys' Fees. *See id.* at Exh. 1.

#### a. *Objections to Time Billed*

#### i. *Items Not Billed to Plaintiff Cannot be Recovered*

Okonite notes the Application for Attorneys' Fees seeks payment of items not originally billed to the Union. *See* Opposition Brief at 9 (citing Gardstein Aff. at ¶ 5); *id.* at Exh. 1. Okonite argues the Union cannot recover fees counsel did not bill. *See id.* (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Daggett v. Kimmelman,* 617 F.Supp. 1269, 1280 (D.N.J.1985); Local Civ.R. 54.2(b)).

■■■■ The cases cited by Okonite stand for the proposition "[h]ours that are not *properly* billed to one's client are also not properly billed to one's adversary pursuant to statutory authority." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933 (emphasis added); *Daggett,* 617 F.Supp. at 1280. This restriction is designed to encourage a prevailing party requesting attorneys' fees to exercise the same billing judgment that would have been exercised in the ordinary course of private practice. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

■■■■ In the instant matter, the Union argues time not originally billed was not billed as the result of an oversight. *See* Gardstein Aff. at ¶ 5. Okonite does not argue the newly included billing entries are of a type not properly billed to a client. *See* Opposition Brief at 9. Rather, Okonite simply argues because the items were not originally billed they must now be excluded. *See id.* This argument is contrary to the rationale of *Hensley,* which simply prevents seeking compensation for items which would not *properly* be billed to the client. Accordingly, inadvertent omissions will not serve as a bar to recovering otherwise proper time expenditures.

the high end of the scale for work done by law students.

ii. *Plaintiff Cannot Recover for Duplicative Services*

Okonite cites several instances where more than one attorney for the Union was present at conferences or depositions. Okonite contends one attorney would have sufficed in these instances and the hours billed should be reduced. *See* Opposition Brief at 5.

Okonite argues the presence of both Ms. Gardstein and Mr. Gifford at two depositions and one meeting was excessive. *See* Opposition Brief at 5. On 7 October 1997 and 9 October 1997, Mr. Gifford joined Ms. Gardstein to defend the depositions of Union witnesses. *See id.* On 17 October 1997, Mr. Gifford joined Ms. Gardstein at a court conference. *See id.* Okonite contends Mr. Gifford attended the depositions and court conference because he was new to the case and needed to gain experience. *See id.*

Okonite contends the following time entries should be denied as excessive:

| 10/7/97 | Gifford | 2.5 hours | Travel to Roseland, defend deposition of Ken Hanson |
| 10/9/97 | Gifford | 3.0 hours | Travel to Roseland, defend deposition of Johnstone |
| 10/9/97 | Gifford | 1.4 hours | Meeting with R. Gardstein, Esq. re: deposition content and strategy |
| 10/17/97 | Gifford | 0.5 hours | Meeting with R. Gardstein to discuss case |
| 10/17/97 | Gifford | 2.00 hours | Travel to and attend court appearance before Judge Cavanaugh |

Okonite further argues there were occasions when both Ms. Gardstein and Mr. Montalbano were present at the same conference or deposition. *See* Moving Brief at 6. Okonite contends, in light of the experience of Ms. Gardstein as a WARN Act litigator, the presence of another partner in these instances was excessive. *See id.* Okonite argues the following billing entries should be stricken:

| 11/11/97 | Montalbano | 3.0 hours | Attend deposition of Company representative Scanlon |
| 11/18/97 | Montalbano | 5.6 hours | Travel to and attend conference with G. Wintjen, Esq. and R. Gardstein, Esq. on jury instructions .... court appearance before Judge Magistrate Cavanaugh. |

The overstaffing of meetings and depositions is a proper basis for reducing a requested fee award. *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) ("Where three attorneys are present at a hearing where one would suffice, compensation should be denied for excess time."); *Blakey* 2 F.Supp.2d at 603. An application seeking compensation for this time should be denied as excessive. *See Copeland*, 641 F.2d at 891.

Ms. Gardstein has been involved in the practice of labor and employment law since 1979. *See* Gardstein Aff. At ¶ 11–12. Ms. Gardstein appears to have extensive experience as a litigator in the area of employment law and recently gave a speech on the WARN Act. *See id.* at ¶¶ 11–15. In light of this experience, it appears Ms. Gardstein was capable of defending depositions and attending conferences without the need for the presence of additional attorneys.

The fact Counsel for Okonite may have had more than one attorney present at a given conference or deposition does not warrant the conclusion it would be reasonable for Counsel for the Union to similarly staff these conferences and depositions. Given the expertise of Ms. Gardstein in the this area of the law, it was unreasonable for Counsel for the Union to bill for the presence of additional attorneys at the challenged depositions and conferences. Accordingly, 8.4 hours will be deducted from the time billed by Mr. Gifford and 8.6 hours will be deducted from the time billed by Mr. Montalbano.

Additionally, Okonite notes Ms. Gardstein and Mr. Montalbano had to assume responsibility for certain work because of the sudden unavailability of associate Mr. Gifford. *See* Opposition brief at 6. Okonite argues the Union should identify the actual hours Ms.

Gardstein and Mr. Montalbano performed work that would have been assigned to Mr. Gifford. *See id.* at 7. Okonite further argues such work should be billed at the rate of an associate. *See id.* at 6–7 (citing *Daggett,* 617 F.Supp. at 1281 (associate level work performed by a partner should be billed at a lower rate). Because the original fee agreement billed all attorney time at the same rate, this argument need not be addressed.

### iii. *Plaintiff Cannot Recover for Unspecified research*

The bill for attorneys' fees provided by the Union contains entries for unspecified research. Okonite contends, in light of the fifty one hours of research billed in this matter, these entries should be deleted. *See* Opposition Brief at 7. The challenged billing entries are:

| | | | |
|---|---|---|---|
| 10/5/97 | Pagidas | 2.00 hours | Research legislative history |
| 11/23/97 | Pagidas | 3.00 hours | Legal research |
| 11/23/97 | Pagidas | 3.00 hours | Legal research |
| 11/24/97 | Pagidas | 5.00 hours | Legal research |

The Union failed to address the reasonableness of the time its counsel expended on research in either the Reply Brief or the Gardstein Reply Affidavit. The Union bears the burden of proving the reasonableness of fees requested in the Application for Attorneys' Fees. *See Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541; *Washington,* 89 F.3d at 1035. The failure to respond to objections raised by Okonite, in combination with the failure of the Moving Brief and supporting documents to address the reasonableness of time spent on research, renders impossible a decision as to the reasonableness of unspecified research time. Accordingly, eleven hours will be deducted from the Application for Attorneys' Fees.

The two hours expended on research of legislative history appears to be distinct from the hours billed simply as "legal research." Two hours of research on the legislative history of the WARN Act appears to be reasonable. Such research would have been beneficial in an effort to obtain a favorable result in this action. The two hours expended on researching legislative history will not be deleted.

### iv. *Hours Expended on Summary Judgment Opposition and Revisions Were Not Reasonable*

On 18 November 1997, Okonite filed its trial brief (the "Trial Brief"), along with a motion for summary judgment and supporting papers. *See* Opposition Brief at 8. The Union filed an opposition to the Okonite motion for summary judgment (the "Summary Judgment Opposition Brief"). Okonite contends the Summary Judgment Opposition Brief filed by the Union was substantially similar to Trial Brief. *See id.* Okonite argues the 35.40 hours billed for the preparation of the Summary Judgment Opposition Brief was excessive and should be reduced. *See id.*

Okonite argues the following entries should be deleted or reduced:

| | | | |
|---|---|---|---|
| 11/26/97 | Gardstein | 7.8 hours | Prepare Summary Judgment opposition |
| 11/27/97 | Gardstein | 11.00 hours | prepare summary judgment opposition and cross-motion papers, including certifications |
| 11/28/97 | Gardstein | 8.10 hours | Prepare summary judgment opposition and cross motion papers |
| 11/29/97 | Gardstein | 8.5 hours | Prepare summary judgment opposition and cross motion papers |
| 1/19/98 | Bernt | 1.8 hours | Drafting Brief |

The Union states the Summary Judgment Opposition Brief was not substantially similar to the Trial Brief. *See* Gardstein Reply Brief at ¶ 9. The Union further states the Summary Judgment Opposition Brief cited several points of argument not included in the Trial Brief, included seventeen additional cases and made extensive reference to the record. *See id.*

Careful review of the Trial Brief and the Summary Judgment Opposition Brief revealed several sections which were nearly identical. *Compare* Trial Brief at 18–20, 22–23, 26–27, 29–21, 32–34, 35 *with* Summary Judgment Opposition Brief at 18–20, 23–24, 29–30, 31–32, 33–35, 36. In addition, of the

seventeen additional cases cited, nine were cited in the section of the brief outlining the standard for summary judgment. *See* Summary Judgment Opposition Brief at 7–8.

With the exception of sections addressing the standard for summary judgment and outlining disagreements with the Statement of Undisputed Facts submitted by Okonite, only one section of the Summary Judgment Opposition Brief is not also addressed by the Trial Brief. *Compare* Trial Brief *with* Summary Judgment Opposition Brief. This section concerns the construction of an agreement by the court, and is approximately eight and one-quarter pages long. *See* Summary Judgment Opposition Brief at 9–17.

 Ms. Gardstein expended 27.3 hours preparing the Trial Brief. *See* Gardstein Aff. at Exh. 1; Opposition Brief at 7 n. 4. Given the amount of time Ms. Gardstein spent on the Trial Brief and her asserted expertise in employment law, it was unreasonable to bill 35.40 hours for the creation of a document substantially similar, in many aspects, to the Trial Brief. The hours expended by Ms. Gardstein in preparing the Summary Judgment Opposition Brief must be reduced to reflect a reasonable amount of time that would have been expended, under the circumstances, by an attorney serving as lead counsel.

In preparing the Summary Judgment Opposition Brief, Ms. Gardstein was required to assimilate additional research, create a fact section with citations to the record, and draft a section concerning the construction of an agreement. The fact remains, however, a substantial portion of the Summary Judgment Opposition Brief incorporated work produced for the Trial Brief.

Under the circumstances, the preparation of the Summary Judgment Opposition Brief should not have required 35.4 hours of lead counsel's time. A reasonable amount of time for lead counsel to have expended on the preparation of a brief involving less than substantial revisions of an earlier brief would

have been twenty hours. The lodestar calculation will be adjusted accordingly.

In addition, Okonite argues expenses related to revisions of the summary judgment papers, as were required by the court, should be deleted. *See* Opposition Brief at 8. The challenged expenses are:

| | | |
|---|---|---|
| 12/11/97 | $9.00 | UPS to Judge Lechner |
| 12/29/97 | $46.00 | Tolls, parking, long distance tel. call to D. Jones |
| 1/5/98 | 17.10 | UPS to R. Delello, Esq. |

 Plaintiff concedes the $46.00 expense reflected on 29 December 1997 was duplicative and should be deleted.[5] *See* Gardstein Reply Aff. at ¶ 12. The $9.00 UPS charge was incurred on 11 December 1997 to forward correspondence. *See id.* While this correspondence was unrelated to revisions required by the court, *see id.,* the use of UPS, as opposed to the regular mail, was excessive. Counsel for the Union will not be compensated for its failure to prepare submissions in a timely fashion which would have allowed for the use of a less expensive means of delivery, i.e. the United States Postal Service. Accordingly, this item will be deleted.

The 5 January 1998 UPS charge of $17.10 was expended on forwarding revised papers to counsel for Okonite. *See* Gardstein Reply Aff. at ¶ 12. The Union states this was a reasonable expense. *See id.* In addition to the reason stated above concerning the denial of costs for the use of special delivery services, this item will be deleted because the Union should bear the cost of forwarding papers it was directed to revise.

> v. *Fees Relating to the Claim for Prejudgment Interest should be denied*

Counsel for the Union spent six hours researching the issue of prejudgment interest for its summary judgment and trial briefs. *See* Gardstein Aff. at Exh. 1; Opposition Brief at 7. The Union was unsuccessful on this claim. *See* 18 June 1998 Opinion at 47–52. Okonite argues time expended researching this issue should be deleted from

---

5. With this exception, Counsel for the Union has not billed for time spent making revisions called

for by the court. *See* Gardstein Aff. at ¶ 22.

the Application for Attorneys Fees. *See* Opposition Brief at 6.

 Okonite contends the 18 June 1998 Opinion concluded the law of the Third Circuit was well settled in this area. *See* Opposition Brief at 6. The 18 June 1998 Opinion, however, stated: "Although this Circuit has not dealt with an award of prejudgment interest in connection with damages awarded pursuant to the WARN Act, other courts dealing with this issue have held that such an award is not precluded by the WARN Act." 18 June 1998 Opinion at 49. Six hours expended researching an area of the law not yet addressed by the Third Circuit and in which decision would be left to the discretion of the court was not excessive.

In addition, the Union is not barred from recovering this fee based upon its lack of success. The claim for prejudgment interest was not a claim separate and distinct from the other WARN Act claims raised by the Union. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his [or her] attorney's fees reduced simply because the district court did not adopt each contention raised." *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933. As the Union was substantially successful in the instant litigation, *see* 18 June 1998 Opinion, there will be no deduction premised upon the lack of success of the claim for prejudgment interest.

b. *Total Reasonable Hours Expended*

The hours billed by Ms. Gardstein are reduced by 15.4 hours, allowing recovery for 307.7 hours. The hours of Mr. Montalbano are reduced by 8.6 hours, allowing recovery for 7.85 hours. The hours of Mr. Gifford are reduced by 8.4 hours, allowing recovery for 45.6 hours. The hours billed by Ms. Pagidas are reduced by 11 hours, allowing recovery for 29.7 hours. The remaining requested hours are granted without change.

B. *The Lodestar Amount and Final Award*

The following represents the reasonable attorneys' fees awarded in the instant matter.

| | | | | | | |
|---|---|---|---|---|---|---|
| Ronnie Gardstein | 307.7 | hours | × | $160 | = | $49232.00 |
| Paul Montalbano | 7.85 | hours | × | 160 | = | 1256.00 |
| Edward Cohen | 2.25 | hours | × | 160 | = | 360.00 |
| Lisa Bernt | 15.1 | hours | × | 160 | = | 2416.00 |
| Robert C. Gifford | 45.6 | hours | × | 160 | = | 7296.00 |
| Michael Weber | 29.0 | hours | × | 60 | = | 1740.00 |
| Nadine Duhamel | 7.3 | hours | × | 60 | = | 438.00 |
| Vicki Pagidas | 29.7 | hours | × | 60 | = | 1782.00 |
| Jeff Schioppa | 1.0 | hours | × | 60 | = | 60.00 |
| Total | 450.5 | hours. | | | | $64580.00 |

The expenses requested totaled $3,611.00. As stated, these expenses will be reduced by $72.10. Reasonable expenses in this matter total $3538.90. Accordingly, the Union is awarded reasonable attorneys' fees in the amount of $68,118.90.

*Conclusion*

For the reasons stated, the Application for Attorneys Fees is granted in part and denied in part. The Union is awarded the sum of $68,118.90.