**MOSAID TECHS. INC.,**

v.

**SAMSUNG ELECS. CO.**

No. CIV.A.01–CV–4340(WJM).

United States District Court,
D. New Jersey.

Sept. 1, 2004.

Alfred J. Lechner, Jr., Morgan, Lewis & Bockius LLP, Robert A. White, Morgan, Lewis & Bockius LLP, Princeton, NJ, Donald A. Robinson, Robinson & Livelli, Newark, NJ, for defendants.

Liza M. Walsh, Connell, Foley LLP, Roseland, NJ, Agnieszka Antonian, Connell, Foley LLP, Roseland, NJ, for plaintiff.

*LETTER–OPINION AND ORDER*
*ORIGINAL FILED WITH*
*CLERK OF THE COURT*

HEDGES, United States Magistrate Judge.

Dear Counsel:

## INTRODUCTION

This matter is before me on plaintiff's (1) application for fees and costs and (2) submission concerning an adverse inference jury instruction. I have considered the papers submitted in support of and in opposition to the application and submission. There was no oral argument. Rule 78.

## BACKGROUND

On July 7, 2004, I ordered, *inter alia,* the following:

(1) that defendants pay monetary sanctions consisting of "(a) reasonable attorneys' fees and costs associated with the motion *sub judice;* and (b) reasonable attorneys' fees and costs associated with plaintiff's attempts to secure discovery;" and

(2) that plaintiff was entitled to "a jury instruction adverse to defendants based on their destruction and nonproduction of e-mail."

(Order of 7/7/04, at 2, 4.) The parties have submitted affidavits, briefs, and the like concerning these two issues, which I will now address.

## DISCUSSION

I. *Attorneys' Fees & Costs*

Plaintiff was granted fees and costs associated with (a) its successful motion for sanctions and (b) its "attempts to secure discovery."

 Plaintiff bears the burden of demonstrating the reasonableness of its hours and fees. *Washington v. Philadelphia County Court,* 89 F.3d 1031, 1035 (3d Cir. 1996). " 'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended multiplied by a reasonable hourly rate.' "

*Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

■ The court should exclude hours that are not "reasonably expended" by virtue of excessiveness, redundancy, or lack of necessity. *Rode,* 892 F.2d at 1183. The hours expended must be "productive." *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. The court is within its discretion to reduce an award for "overstaffing" and the like, *Local Union No.1992 v. Okonite Co.,* 34 F.Supp.2d 230, 237 (D.N.J.1998), and it can deduct hours spent litigating distinct claims on which a party did not prevail, *Rode,* 892 F.2d at 1183. Also, a petition must be specific enough to allow the court to analyze thoroughly the reasonableness of the request. *Washington,* 89 F.3d at 1037.

■ Once the court determines the hours expended, it must examine the reasonableness of the rate. *Rode,* 892 F.2d at 1183. This analysis requires inquiry into the prevailing market rates in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

■■ After determining the reasonable hours and rates, the court multiplies the numbers to arrive at the "lodestar." *Rode,* 892 F.2d at 1183. Defendants have the burden of establishing that a downward adjustment in the lodestar is necessary. 892 F.2d at 1183. The court can make such an adjustment if the "lodestar is not reasonable in light of the results obtained." 892 F.2d at 1183.

■ Having set forth the preceding analysis, it bears emphasis that the calculation of fees is "an inexact science." *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 267 (S.D.N.Y.1995). "Especially where the fee requests are voluminous, courts need not 'become enmeshed in a meticulous analy-

sis of every detailed facet of the professional representation.' " 161 F.R.D. at 267 (citation omitted).

Taking into consideration the foregoing, I now turn to the respective affidavits of plaintiff's attorneys, Jones Day and Connell Foley.

### A. Jones Day's Fees & Costs

1. Fees & Costs Associated with Motion for Sanctions

Plaintiff is entitled to the following for Jones Day's efforts on the sanctions motion:

■ *$187,882.00* in fees, and

■ *$1,849.53* in costs.

■ The affidavits of Jones Day reveal, for the most part, reasonable hours expended for productive work.[1] Nevertheless, there are exceptions. I will not allow fees for several entries that were either clearly unrelated to the sanctions motion or so vague as to render it unduly difficult for me to make such an assessment. *See Washington,* 89 F.3d at 1037. For example, Mr. Wamsley spent nearly seven (7) hours on March 16, 2004, at an hourly rate of $470.00, drafting a letter to me regarding "discovery issues" and talking on the telephone with four other attorneys "regarding same." This entry does not, on its face, reveal fees associated with the sanctions motion, and plaintiff does not carry its burden. *See Washington,* 89 F.3d at 1035. Similarly, Mr. Feeling, in the month of June 2004, logged more than forty (40) hours for work described as "attention to" defendants' opposition motion. I cannot determine whether such work was reasonable, *see Washington,* 89 F.3d at 1037, and I am in any event inclined to label such insufficiently descriptive charges, at $310.00 an hour, excessive and redundant, *see Rode,* 892 F.2d at 1183.

---

1. Defendants, rather than challenging the *hourly* rates charged by plaintiff's counsel, seek to compare the latter's *aggregate* fees to those in patent litigation generally in "the New York City area." (Defs.' Br. at 19–20.) While this comparison is relevant in determining whether certain of plaintiff's counsels' fees were excessive, I have no reason to doubt, in light of comparable rates for

this type of litigation in this region, *see Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the reasonableness of the hourly rates charged by either Jones Day or Connell Foley. I therefore decline to reduce any fee amount solely on grounds of an excessive hourly rate.

■ Many of the fees would have been incurred in any event, and I therefore disallow these. For example, the firm spent many hours "reviewing" documents actually *produced* by defendants. While such review may have been tangentially related to the sanctions motion, plaintiff most likely would have performed this work irrespective of the instant dispute. *See Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.*, 212 F.R.D. 94, 104 (E.D.N.Y.2002).

■ I shall also discount several hours that appear clearly excessive. *See Rode,* 892 F.2d at 1183. For example, Mr. Lindefjeld, in March and April 2004, billed one hundred and thirty eight (138) hours for his drafting and revision work on the moving papers. While I will allow many of these hours, it seems unfair to charge defendants fully for a partner's apparently disproportionate share of the drafting of this motion.[2] *See Bowne,* 161 F.R.D. at 267–68.

With respect to Jones Day's costs, I shall disallow its experts' fees. The descriptions offer no basis for concluding that these experts performed services associated with the sanctions motion.

### 2. Fees & Costs Associated with Efforts to Secure Discovery [3]

■ Plaintiff is entitled to the following for Jones Day's efforts to secure discovery:

■ *$267,128.56* in fees, and

■ *$1,148.18* in costs, including experts' fees.

Preliminarily, my Order awarding fees and costs for efforts to "secure discovery" was intended to be confined to plaintiff's successful attempts to obtain discovery withheld or otherwise not initially produced by defendants. It was not a blanket mandate that defendants finance plaintiff's litigation during the discovery phase. Nor did I intend to award plaintiff fees accrued for unsuccessful positions taken in discovery disputes. Accordingly, I shall disallow certain entries concerning discovery generally.

Along similar lines, Jones Day submits an extraordinary number of entries concerning review and analysis of produced discovery. Again, my Order awarded fees for efforts to *secure* discovery, not to review it. While I appreciate the fact that an analysis of documents produced is necessary to determine what deficiencies exist, and that many of the documents reviewed were the subject of one discovery dispute or another, most of this work would have been performed in any event. *See Creative Res. Group,* 212 F.R.D. at 104. Insofar as Jones Day performed discovery analyses it would not have otherwise done in the absence of defendants' behavior, it did not separately account for this excess work. Consequently, plaintiff is not entitled to such fees. *See Washington,* 89 F.3d at 1037.

■ With respect to costs, I will disallow virtually all experts' fees. To the extent the entries reveal anything about what these experts were doing and why, these offer no basis for believing that the work of these experts had anything to do with securing discovery. For example, plaintiff seeks nearly $125,000 for the work of one of its experts, Mr. Taylor, yet virtually every entry it submits in this regard reflects "review" of either "prior art," "Samsung schematics," or both. Presumably, review of prior art and defendants' schematics was what Mr. Taylor would do irrespective of any ongoing disputes at the time this work was performed. These entries are both duplicative of other necessary

---

**2.** I am not moved by defendants' general concern over the number of partners working on this motion. Given what was at stake, I do not find it unreasonable that such priority was given to the sanctions issue. Consequently, I considered the attorney's status at the firm not as a general matter but only insofar as it was relevant, as in the case of Mr. Lindefjeld, to a particular series of entries.

**3.** I reject defendants' argument that any discovery-related fees and costs must have a tight, causal nexus with their discovery abuses. While this argument would have merit had my Order been confined to Rule 37, that was not the basis of my ruling. This Court's inherent power to sanction is merely supplemented by the rules and is in no way restricted by sanctions provisions therein. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–48, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Having stated that, however, I discuss the limits of my Order below.

litigation expenses and too vague to warrant reimbursement.

In summary, the amounts for fees and costs listed above concerning sanctions and efforts to secure discovery constitute the lodestar for Jones Day's work. Owing to plaintiff's success on the motion for sanctions, no downward adjustment in these amounts is justified. *See Rode*, 892 F.2d at 1183.

### B. *Connell Foley's Fees & Costs*

Plaintiff is entitled to the following for Connell Foley's efforts concerning the sanctions motion and to secure discovery:

■ *$108,831.70* in fees and costs.

The affidavits of Connell Foley, in small part, reflect the same deficiencies as Jones Day's. Many of the entries are so general that it is not possible for me to determine whether the fees are reasonable. *See Washington*, 89 F.3d at 1037. For example, there are entries that indicate a "telephone conference" with another attorney, "preparation" of a "letter" to a judge, or "review" of "correspondence," all without reference to any subject matter whatever. Others still are seemingly unrelated to the discovery issues altogether, such as conference calls concerning "case status," discussions about expert reports, and attorneys "attending" to correspondence concerning "claim construction."

Also, while I am reluctantly awarding fees for certain hearings that I recall, by chance, happened to concern discovery-related issues on which plaintiff ultimately prevailed, I have no obligation to meticulously search the record for the subject matter of these hearings. *See Bowne*, 161 F.R.D. at 267. Consequently, plaintiff is not entitled to all its fees in this respect. *See Washington*, 89 F.3d at 1035 (placing burden of demonstrating reasonableness on plaintiff).

Finally, Connell Foley, like Jones Day, submits entries that appear to document review of materials actually produced by defendants. As this was work that would have been conducted in any event, it is discounted. *See Creative Res. Group*, 212 F.R.D. at 104.

The remainder of Connell Foley's entries constitute reasonable hours expended for productive work. For these reasons, the amount stated above represents the lodestar amount. In light of the results obtained by counsel for plaintiff, no downward adjustment of the lodestar is warranted. *See Rode*, 892 F.2d at 1183.

### II. *Jury Instructions*

Plaintiff proposes the following instruction:

In proceedings prior to the trial in this case, this Court found that the Samsung defendants had destroyed all of their email messages, even thought the defendants knew or should have known that those email messages included relevant evidence and that they should not have been destroyed. Because the Samsung defendants destroyed these email messages, you may infer that the contents of those email messages would have been harmful to the Samsung defendants' positions in this case. You need not draw this inference; I merely instruct you that you may do so.

(Pl.'s Jury Instruction on Adverse Inference.)

Defendants argue that this instruction ignores the jury's role, is overly broad, and will inflame the jury. They propose the following instruction:

\* \* \* \* \* \*

If you determine that the information before you is insufficient to establish a fact material to the issues of this case and that the e-mails could have established that fact, you are permitted, but not required, to consider the non-production of e-mail in determining what inferences to draw from the evidence and the facts in the case. In deciding whether to draw an inference, you should consider whether the e-mails would merely have been duplicative of or equivalent to other evidence already before you, and whether the defendant's actions were reasonable.

Again, any inference you decide to draw should be based on all of the facts and circumstances in this case. Although you may draw an inference based on all the facts and circumstances, you are not required to draw any inference.

(Defs.' Resp. to Pl.'s Proposed Jury Instruction, at 4–5.)

 Neither instruction is adequate. The purposes of an adverse jury instruction include punishment of the spoliator, deterrence of future misconduct, and the restoration of the movant to a position in which it would have been had its adversary faithfully observed its discovery duties. *See Zubulake v. UBS Warburg LLC*, No. 02–1243, 2004 WL 1620866, at *12, 2004 U.S. Dist. LEXIS 13574, at *51 (S.D.N.Y. July 20, 2004). The following instruction furthers these aims, and it should be given to the jury:

> You have heard that defendants failed to produce virtually all technical and other e-mails in this case. Plaintiff has argued that these e-mails were in defendants' control and would have proven facts relevant to the issues in this case.
>
> If you find that defendants could have produced these e-mails, and that the evidence was within their control, and that the e-mails would have been relevant in deciding disputed facts in this case, you are permitted, but not required, to infer that the evidence would have been unfavorable to defendants.
>
> In deciding whether to draw this inference, you may consider whether these e-mails would merely have duplicated other evidence already before you. You may also consider whether you are satisfied that defendants' failure to produce this information was reasonable. Again, any inference you decide to draw should be based on all the facts and circumstances of this case.

*See Zubulake*, 2004 WL 1620866, at *15, 2004 U.S. Dist. LEXIS 13574, at *61–62.

While I appreciate the extent to which plaintiff's proposed instruction advances the punishment and deterrent goals of the sanction, it fails adequately to take into account the "make whole" aim of the adverse inference instruction. The breadth and finality of plaintiff's instruction would likely have an *in terrorem* effect on the jury, an effect that would elevate these e-mails to an arguably unjustified level of importance and create a potentially insurmountable hurdle for defendants. *See Zubulake v. UBS Warburg LLC*,

220 F.R.D. 212, 219–20 (S.D.N.Y.2003). This goes beyond making plaintiff whole. *See Zubulake*, 2004 WL 1620866, at *15, 2004 U.S. Dist. LEXIS 13574, at *51. Moreover, plaintiff's instruction appears on its face to deprive defendants of an opportunity to put on any evidence either in defense of their discovery failures or concerning the implications of those failures to this case. The facts here do not warrant something so extreme. *See Stevenson v. Union Pacific RR Co.*, 354 F.3d 739, 750–51 (8th Cir.2004) (reasoning that exclusion of rebuttal testimony to explain spoliation is typically limited to when the offending party destroys the one piece of crucial physical evidence in the case).

Defendants' instruction, while closer to the *Zubulake* instruction mirrored here, fails to reflect the seriousness of the spoliation and the language of my Order. For example, instructing the jury that the e-mails were "deleted from [defendants'] computer system in the ordinary course of business" grafts a certain innocence onto the event that is unwarranted by my findings and, more important, that will need to be proven at trial. *See Stevenson*, 354 F.3d at 750 (permitting defendant to put on some evidence at trial of document retention policies "as an innocent explanation for its conduct").

Also, the instruction arguably fails to make plaintiff whole or to deter future misconduct. For example, defendants would have the Court instruct the jurors that the inference could be drawn "if [they] determine that the information before [them] is insufficient to establish a fact material to the issues of this case." While the jurors should certainly be instructed to consider all the facts before it, *see Zubulake*, 2004 WL 1620866, at *15, 2004 U.S. Dist. LEXIS 13574, at *61–62, there is no basis for allowing the inference only if the evidence before the jurors is insufficient to establish a fact. Were that the case, defendants' spoliation would be rewarded rather than punished, because only the evidence they chose to produce would be factored into the calculus of whether a material fact had been "sufficiently" established.

In sum, I am satisfied that the jury instruction set forth above satisfies the aims of

the adverse inference jury instruction and strikes a balance between the two extremes sought by the parties.

### CONCLUSION

For the reasons set forth above, defendants shall remit to plaintiff the amounts stated herein for attorneys' fees and costs. The jury should be given the instruction set forth above.

SO ORDERED.

