**NEW MEXICO CITIZENS FOR CLEAN AIR AND WATER; Pueblo of San Juan, Plaintiffs–Appellees,**

v.

**ESPANOLA MERCANTILE COMPANY, INC., doing business as Espanola Transit Mix Co., Defendant–Appellant.**

No. 94–2254.

United States Court of Appeals, Tenth Circuit.

Jan. 2, 1996.

---

Grove T. Burnett and Eric Ames, Western Environmental Law Center, Santa Fe, New Mexico, for Plaintiffs–Appellees.

Holly A. Hart of Scheuer, Yost & Patterson, P.C., Santa Fe, New Mexico, for Defendant–Appellant.

Before MOORE, BARRETT, and WEIS,[*] Circuit Judges.

WEIS, Senior Circuit Judge.

In this appeal[1], we conclude that one plaintiff's compliance with the pre-suit notice requirements of the Clean Water Act, 33 U.S.C. § 1365(b), does not satisfy the duty of another plaintiff to give notice on its own behalf. Therefore, the non-complying plaintiff cannot be a prevailing party entitled to counsel fees. We also decide that an award of counsel fees must take into account the degree of success attained by the prevailing plaintiff. Because the district court did not articulate such an apportionment, we will reverse and remand.

This is an action to enforce the Clean Water Act against defendant for unpermitted discharges and other violations at the Espa-

---

[*] Honorable Joseph F. Weis, Jr., Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

nola Transit Mix Facility in Espanola, New Mexico. Plaintiff New Mexico Citizens for Clean Air and Water is an environmental group and plaintiff Pueblo of San Juan is an Indian tribe that owns the affected land. The citizens' group gave the sixty-day notice required by 33 U.S.C. § 1365(b) before filing the complaint, but the Pueblo did not.

Not long after the suit was commenced, the parties entered into settlement negotiations, culminating in their submission of four issues to the magistrate judge for binding arbitration. Plaintiffs prevailed on two of the issues and defendant prevailed on the other two. Thereafter, the parties entered into a consent decree.

The consent decree provided that, in settlement of the plaintiffs' claim for civil penalties, defendant would carry out and pay the costs of the treatment plan that was attached. Defendant also agreed not to discharge any pollutants except as authorized by a permit and to implement any mitigation or restoration requirements imposed by the permitting agency as a condition of receiving the permit.

The consent decree further provided in pertinent part: "Defendant stipulates that it is not entitled to an award of attorneys fees. Plaintiffs shall submit their petition for attorneys fees within twenty (20) days after entry of this Consent Decree. Defendant agrees to pay attorney fees awarded to Plaintiffs by the Court."

After both plaintiffs submitted requests, the district court awarded $46,003.69 in fees and costs. Defendant appeals the award.

## I.

Defendant contends that plaintiffs are not entitled to fees because they were not prevailing parties and the attorney fee language in the consent decree was not a stipulation conceding that status. A review of the brief it filed in the district court reveals that defendant never made this particular argument. Therefore, we will not consider this point on appeal. See *Farmers Ins. Co. v. Hubbard,* 869 F.2d 565, 570 (10th Cir.1989) (except for jurisdictional issues, this Court will not consider arguments raised for the first time on appeal).

## II.

Defendant argues, on a separate ground, that the Pueblo is not entitled to attorney fees because it failed to give the notice required under the Clean Water Act before commencing suit. Section 1365(a)(1) authorizes citizen suits against any person who is alleged to be in violation of an effluent standard or limitation under the Act or of an administrative order. Section 1365(b)(1)(A) provides that "[n]o action may be commenced ... under subsection (a)(1) of this section ... prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." Pursuant to 40 C.F.R. § 135.3, the notice must include the name and address of the person giving notice.

In the district court, the Pueblo conceded that it did not comply with the Act, but argued that the notice given by Citizens was adequate for § 1365 purposes. Defendant agreed that the Citizens notice was proper, but, relying on *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), argued that the Pueblo had to give its own notice to be a party to the suit.

In *Hallstrom,* the Supreme Court addressed a similar sixty-day notice provision in the Resource Conservation and Recovery Act and stated that, "[u]nder a literal reading of the statute, compliance with the 60–day notice provision is a mandatory, not optional, condition precedent for suit." *Id.* at 26, 110 S.Ct. at 309. The Court then considered whether the statute should be given a strict or a flexible construction, a matter on which the Courts of Appeals were divided.

Noting that the plaintiff in a Resource Act [RCRA] action has "full control" over the timing of the suit, and therefore, over its ability to comply with the notice requirements, the Court decided that "[t]he equities do not weigh in favor of modifying statutory requirements when the procedural default is

caused by petitioners' 'failure to take the minimal steps necessary' to preserve their claims." *Id.* at 27, 110 S.Ct. at 309 (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975)). The Court held, therefore, that "the notice and 60–day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion." *Id.* at 31, 110 S.Ct. at 311.

Although the parties had framed the issue in terms of whether the notice provision was jurisdictional or procedural, the Court concluded:

> In light of our literal interpretation of the statutory requirement, we need not determine whether [42 U.S.C.] § 6972(b) [the 60–day notice provision of the Resource Act] is jurisdictional in the strict sense of the term. *See Fair Assessment in Real Estate Assn., Inc. v. McNary,* 454 U.S. 100, 137 [102 S.Ct. 177, 196–97, 70 L.Ed.2d 271] (1981) (Brennan, J., concurring in judgment) ("In 1937 the requirement of exhaustion of state administrative remedies was certainly a mandatory precondition to suit, and in that sense a 'jurisdictional prerequisite' ").

*Id.* Because the plaintiff had failed to notify either the state or the EPA sixty days before bringing suit, the Court decided that "the district court must dismiss the action as barred by the terms of the statute." *Id.* at 33, 110 S.Ct. at 312.

Since *Hallstrom,* several Courts of Appeals have held that compliance with the sixty-day notice requirements in the Clean Water Act is also a mandatory precondition to suit. *See Public Interest Research Group of New Jersey, Inc. v. Windall,* 51 F.3d 1179, 1189 n. 15 (3d Cir.1995); *Washington Trout v. McCain Foods, Inc.,* 45 F.3d 1351, 1354 (9th Cir.1995); *Greene v. Reilly,* 956 F.2d 593, 594 (6th Cir.1992); *National Envtl. Found. v. ABC Rail Corp.,* 926 F.2d 1096, 1097 (11th Cir.1991). We agree with these holdings. The question, therefore, becomes whether each plaintiff must comply with the sixty-day notice requirements to be a proper party to a citizen suit.

In *Washington Trout,* an attorney gave a sixty-day notice on behalf of a union "among perhaps others." 45 F.3d at 1352. When suit was filed, two other parties, the Audubon Society and Washington Trout, joined the union as plaintiffs. After the union had been dismissed from the case, the defendant moved to dismiss the other two plaintiffs as well. The district court granted the motion and the Court of Appeals affirmed, citing *Hallstrom*'s admonition that the notice requirement was to be strictly construed. The Court of Appeals explained that the purpose of pre-suit notice is to allow the parties time to "resolve their conflicts in a nonadversarial time period." *Id.* at 1354. In addition, the notice alerts the appropriate agency so that "administrative action may initially provide" relief before a court becomes involved. *Id.* If the defendant and the agencies do not know the parties involved, effective negotiation is not possible.

We find ourselves in agreement with the holding and reasoning of the *Washington Trout* Court. Although some district courts have adopted a pragmatic view that notice by one plaintiff acts as notice by all, *see, e.g., Environmental Defense Fund v. Tidwell,* 837 F.Supp. 1344, 1352–53 (E.D.N.C.1992), we think that approach is inconsistent with *Hallstrom.* As the Supreme Court remarked in that case: " '[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' " 493 U.S. at 31, 110 S.Ct. at 311 (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)).

■ Therefore, because of its failure to give proper notice before bringing suit under the Clean Water Act, the Pueblo was not a proper party to the action. It follows that the district court should not have awarded the Pueblo any attorney fees for its participation as a party in the action.[2] Because

---

2. In the district court, plaintiffs argued that the defendant's agreement to pay attorney fees in the consent decree essentially waived the Pueblo's noncompliance with the notice requirements.

the Clean Water Act violations at issue affected land owned by the Pueblo, we recognize, however, that counsel for Citizens might have billed for services in connection with the tribe's concerns even if it had not been a party to the action. Therefore, on remand, the district court should differentiate between those fees that resulted from the Pueblo's participation as a party and those fees involving the Pueblo that Citizens would have incurred in any event.

### III.

"[T]he district court has discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). "It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award." *Id.* District courts should sufficiently "articulate specific reasons for fee awards to give us an adequate basis for review." *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.1983). The district court need not, however, "identify and justify each disallowed hour" or "announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir.1986).

The Defendant's first challenge to the amount of fees awarded concerns the district court's failure to consider whether any modification of the lodestar figure should be made based on Citizens' limited success in the action. In the district court, defendant argued that plaintiffs were not as successful as they had portrayed themselves to be in their fee petition. In its order, the district court commented that it was "unable to discern that this lawsuit accomplished everything that the plaintiffs believe it did." The court then stated that it did not have to determine whether plaintiffs qualified as prevailing parties, because defendant had agreed to pay reasonable attorney fees. The court did not

thereafter mention the plaintiffs' degree of success in the action.

We recently noted in *Jane L. v. Bangerter*, 61 F.3d 1505, 1511, (10th Cir.1995), that "*Hensley* contemplates adjustments to the lodestar to reflect plaintiffs' overall success." In making such adjustment, we held that "the district court must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *Id.* (citing *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941). Here, the district court's order does not reflect that it made any qualitative assessment.

Citizens contends that the district court properly forwent any consideration of its degree of success because "[i]f a party agrees to pay all reasonable attorneys' fees—that is, the lodestar figure—there is no need for the district court to reach the *Hensley* factors." However, Citizens cites no legal authority for this contention, which is contrary to *Hensley* itself.

*Hensley* describes calculation of the lodestar amount as "[t]he most useful starting point for determining the amount of a reasonable fee," 461 U.S. at 433, 103 S.Ct. at 1939, and also states that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry," *id.* at 434, 103 S.Ct. at 1940. Likewise, our opinion in *Ramos* demonstrates that calculation of the lodestar figure is just the beginning, 713 F.2d at 552–555, and that other factors, such as the plaintiff's degree of success, also must be considered in arriving at a reasonable fee award, *id.* at 556–59.

"When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results

Plaintiffs have abandoned this argument on appeal and we do not address it. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n. 7 (10th Cir. 1990). Therefore, we need not decide the intriguing issue so carefully left open by *Hallstrom*— whether a mandatory precondition to suit is a component of non-waivable "subject matter jur-

isdiction." *Cf. Windall*, 51 F.3d at 1189 n. 15 (3d Cir.1995) (notice provision is "jurisdictional prerequisite"); *Washington Trout*, 45 F.3d at 1354–55 (lack of notice deprived court of "subject matter" jurisdiction); *ABC Rail Corp.*, 926 F.2d at 1097–98 (notice is mandatory precondition to suit).

obtained." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. In the absence of such finding in the record here, we must remand for the district court to consider to what extent the fee award should be adjusted based on Citizens' degree of success.

Defendant raises numerous other challenges to the amount of fees awarded, some of which were not specifically raised in the district court. Only three of these other objections merit consideration by the district court on remand.

The first is the defendant's contention that attorney Eric Ames improperly billed attorney rates for tasks that either could have been performed by someone other than an attorney or that are not properly compensable at any rate. Specifically, defendant objects to paying attorney rates for time spent investigating the factual basis for Citizens' claims and time spent performing what defendant characterizes as secretarial duties, *e.g.,* copying documents, faxing documents, and filing documents.

■ "[W]hen a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable." *Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 942 (3d Cir.1995); *see also Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates.... A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."); *Mares,* 801 F.2d at 1204 (criticizing fees for messenger services).

Although commenting that Ames was not entitled to compensation for at least one secretarial task—organizing files—the district court's opinion does not reflect whether it carefully scrutinized some of the other seemingly secretarial work Ames performed. Further, the opinion does not reflect consideration of the defendant's argument that a paralegal or investigator could have per-

formed much, if not all, of the factual investigation of Citizens' claims. We express no opinion as to whether any of the challenged time is properly compensable at attorney rates, but commend the matter to the district court's attention on remand.

■ The second matter the district court should consider is the potential duplication of effort. Defendant contends that the attendance of two attorneys for Citizens at various meetings was not necessary, and that only one attorney's time should be billed.[3] While we have "decline[d] to require an automatic reduction of reported hours to adjust for multiple representation," we have advised district courts to "give particular attention to the possibility of duplication." *Ramos,* 713 F.2d at 554.

Here, the district court did consider whether the two attorneys properly billed for conferences with each other, but the opinion does not disclose whether the judge also considered potential duplication of effort by the attorneys when meeting with others, such as the plaintiffs, defense counsel, or the court. On remand, the district court should give attention to the possibility of duplication in these meetings as well.

Finally, defendant contends, and Citizens concedes, that the district court failed to eliminate all the time billed by counsel for communications with the press. The district court stated its intention to eliminate all time spent on press-related matters, except time spent in preparing a post-settlement press release, but the court overlooked some press-related billing entries in its reduction of counsel's fees. *See Halderman,* 49 F.3d at 942 ("[T]he proper forum for litigation is the courtroom, not the media."). On remand, the court should reduce the fee award accordingly.

The judgment of the United States District Court for the District of New Mexico is REVERSED, and the matter is REMAND-

---

3. Defendant also contends that counsel should not be able to bill any fee for their attendance at a second settlement conference before the magistrate judge. Because defendant did not raise this

challenge in the district court, we need not consider it on appeal. *See Farmers Ins. Co.,* 869 F.2d at 570.

ED for further proceedings consistent with this Opinion.

Each party to bear its own costs.