**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALBERTO SOTO and ISMAEL ORTIZ,

    Plaintiffs - Appellees,

v.

ARTURO JURADO AND JURADO
FARMS,

    Defendants - Appellants.

No. 97-2231

(D.C. No. 96-CV-184-BB)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

Defendants Arturo Jurado and Jurado Farms appeal the district court's judgment awarding damages and attorneys' fees to Plaintiffs Alberto Soto and Ismael Ortiz. On appeal, Defendants contend that the district court erroneously: (1) found that Arturo Jurado participated in a conspiracy to terminate Plaintiffs; (2) awarded damages to Plaintiffs; and (3) awarded excessive and unreasonable attorneys' fees to Plaintiffs. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

Plaintiffs are agricultural workers engaged in the business of picking chile in southern New Mexico. In October 1995, Plaintiffs worked for farm labor contractor Agustin Hernandez picking chile on a farm belonging to Steve Bamert. While employed by Hernandez, Plaintiffs were involved in a lawsuit filed against Defendant Arturo Jurado. See Palacios v. Jurado, No. 94-CV-792 (D.N.M. 1995). Plaintiff Soto was a party to the lawsuit and Plaintiff Ortiz participated as a witness.

Plaintiffs testified in Palacios on October 24 and 25 and returned to work that same week. On October 27, 1995, Defendant Arturo Jurado visited Bamert's farm. During this visit, he recognized one of the workers who testified against him in Palacios. Defendant gave Bamert a list of farm workers who were plaintiffs in Palacios and who testified for the plaintiffs. Defendant told Bamert that the farm workers, including both Plaintiffs, were "indiscriminately suing farmers, chile plant owners, whoever" and warned that Bamert should "watch out for them."

After discussing the farm workers with Defendant Arturo Jurado, Bamert relayed the contents of the list to Plaintiffs' employer, Agustin Hernandez. Bamert told Hernandez to "watch out for these people . . . they are indiscriminately suing farmers, chile plant owners, whoever." Within two work days, Hernandez fired Plaintiffs. Plaintiffs immediately sought the advice of an attorney. That same day, their attorney contacted Hernandez and told him that it was illegal to retaliate against Plaintiffs for

2

participating in the Palacios case. Hernandez called Plaintiffs back to work the next day and, although neither Plaintiff worked that day, payed them for working the day on which they were fired. Hernandez had never before paid a worker for a day he or she did not actually work.

Plaintiffs subsequently filed suit against Defendants arguing that Defendants, Hernandez and Bamert participated in a conspiracy to retaliate against Plaintiffs for bringing suit and testifying against Arturo Jurado in the Palacios case. Plaintiffs claimed that Defendants actions violated the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. § 1855 (AWPA), the Fair Labor Standards Act, 29 U.S.C. § 215 (FLSA), and 42 U.S.C. § 1985. As relief, Plaintiffs requested that the district court: (1) declare that Defendants violated Plaintiffs rights under the three statutes; (2) enjoin Defendants from engaging in discriminatory practices against them; (3) award Plaintiffs statutory damages pursuant to the AWPA; and (4) award Plaintiffs attorneys' fees and costs.

The district court tried the case without a jury. The district court found that Defendants conspired against Plaintiffs because of their involvement in Palacios. Accordingly, the court awarded each Plaintiff $5,000 in compensatory damages and $5,000 in punitive damages, plus attorneys' fees, for Defendants' violation of § 1985. The court further awarded each Plaintiff $30 in liquidated damages and $1,000 in punitive damages under the FLSA. The court then awarded each Plaintiff $500 under the

3

AWPA.

Defendants contested the court's damage award under the FLSA. The court agreed and entered a new order which did not contain an award under the FLSA. In its amended findings of fact and conclusions of law, the court also awarded Plaintiffs attorneys' fees of $67,637.50 and costs in the amount of $1,353.89. Defendant then filed a Motion to Amend Judgment and Attorney's Fees. The court granted the motion in part and reduced Plaintiffs' attorneys' fees by $16,868.75. Then, acting on Plaintiffs' Supplemental Application for Fees, the court awarded Plaintiffs additional attorneys' fees of $2,912.50, bringing the entire attorneys' fees award to $53,681.25.

## II.

## A.

Defendants first argue that the district court erred in finding that Defendant Arturo Jurado conspired with Hernandez and Bamert to terminate Plaintiffs. Specifically, Defendants argue that the evidence presented at trial was insufficient to support the finding and that the district court improperly considered Plaintiffs' hearsay statements as substantive proof of the conspiracy.

Although apparently independent, Defendants' hearsay and sufficiency arguments are necessarily intertwined. In order for a co-conspirator's out of court statement to be admissible, the proponent of the evidence must first prove by a preponderance of the evidence the existence of a conspiracy and that the defendant participated in the

4

conspiracy. <u>United States v. Esparsen</u>, 930 F.2d 1461, 1475 (10th Cir. 1991).[1] "The contents of the [hearsay] statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered . . . ." Fed. R. Evid. 801(d)(2)(E). <u>see</u> <u>also</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 181 (1987). Thus, the proponent may offer the hearsay statement at issue to prove the existence of a conspiracy, but such statement must be corroborated by independent evidence. <u>Esparsen</u>, 930 F.2d at 1475.

Defendants ultimately seek a determination that the evidence before the district court did not support its finding that Defendants participated in a conspiracy to terminate Plaintiffs. Defendants' also seek a determination that the district court improperly relied on hearsay statements made by an alleged coconspirator. Because we must find by a preponderance of the evidence that a conspiracy existed before we may determine

---

[1] Generally, courts make the predicate finding of a conspiracy in one of two ways; by holding a separate hearing or by allowing the statements in on the assurance that the statements and additional evidence will prove the underlying conspiracy. In <u>United States v. Urena</u>, 27 F.3d 1487, 1491 (10th Cir. 1994), we announced that the preferred order of proof in determining the admissibility of an alleged coconspirator statement is to first hold a separate hearing outside the presence of the jury to determine whether the plaintiff can prove a conspiracy by a preponderance of the evidence. This order of proof, we explained, eliminates the possibility of prejudice where the court admits the coconspirator's statement over objection, but the offering party subsequently fails to prove the underlying conspiracy. We emphasized, however, that the order of proof was a preference, and that the trial judge retained the discretion to admit hearsay statements with the idea that the statements will later "connect-up" and show the existence of the predicate conspiracy. <u>Id</u>. In any event, the order of proof is of lesser importance in the context of a bench trial where the judge acts as the finder-of-fact. <u>Cf</u>. <u>Allen v. McOtter</u>, 804 F.2d 1362, 1363-64 (5th Cir. 1986) (judge acting as finder-of-fact need not conduct separate hearing on voluntariness).

whether the hearsay statements were properly introduced under Fed. R. Evid. 801(d)(2)(E), Defendants' first argument is necessarily consumed by their second.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Because courts often view such statements as unreliable, hearsay is typically not admissible evidence. See Idaho v. Wright, 497 U.S. 805, 817 (1990). The Federal Rules of Evidence, however, classify certain types of statements, which would normally be inadmissible hearsay, as properly admitted into evidence. See Fed. R. Evid. 801(d). A statement by a "coconspirator of a party during the course and in furtherance of the conspiracy" is such a statement. See Fed. R. Evid. 801(d)(2)(E).

Although not entirely clear, Defendants appear to complain about the following statements admitted at trial:

1) a statement by Plaintiff Soto that Gregorio Reyes told him that Hernandez told Reyes that Defendant Arturo Jurado ordered Hernandez to fire Soto because he was a "bad influence or bad element."
2) a statement by Plaintiff Soto that Hernandez told him that Bamert had given Hernandez a list of seven people, including Soto, who were "bad elements."
3) a statement by Plaintiff Ortiz that Hernandez told him "you cannot continue picking because this is an order from Arturo [Jurado] and Steve [Bamert]."

We initially note a double hearsay problem with the first statement made by Plaintiff Soto. Fed. R. Evid. 805 provides that "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule . . . ." The first level of hearsay in this statement is Reyes' statement that

Hernandez told him to fire Plaintiff Soto. The second level is Hernandez's statement that Defendant Arturo Jurado ordered Hernandez to fire Soto. Even assuming the second level comes under an exception to the hearsay rule, Reyes account of what Hernandez told him is inadmissible and, therefore, renders the entire statement inadmissible. Although the record reveals a good deal of evidence showing a conspiracy between Defendant Jurado, Hernandez, and Bamert, this statement is the only such evidence suggesting Reyes participated. Without more, Plaintiffs have not proven by a preponderance that Reyes participated in the conspiracy. Because Reyes' statement is not admissible under Fed. R. Evid. 801(d)(2)(E) or any exception to the hearsay rule, any reliance on the first statement by the district court was misplaced.

We now review the second two statements to determine whether they are non-hearsay under Fed. R. Evid. 801(d)(2)(E). The first step in this inquiry is to determine whether Plaintiffs proved by a preponderance of the evidence that Hernandez, Bamert and Defendant Arturo Jurado participated in a conspiracy. In making this determination, we look at the hearsay statements themselves, as well as any additional evidence presented to the district court. Bourjaily, 483 U.S. at 181.

To prove a civil rights conspiracy under 42 U.S.C. § 1985(2), Plaintiffs were required to show: (1) a conspiracy by Defendants; (2) to injure a party or witness in his or her person or property; (3) because of attending federal court or testifying in any matter pending in federal court; (4) which actually results in injury or damages to Plaintiffs.

7

Portman v. County of Santa Clara, 995 F.2d 898, (9th Cir. 1993) (citing 42 U.S.C. 1985(2)). Considering the evidence in its entirety, and viewing it in a light most favorable to the district court's finding, we conclude Plaintiffs proved that Jurado, Hernandez and Bamert conspired to terminate Plaintiffs because they participated in Palacios.

The record clearly shows that Defendant Arturo Jurado is a major player in the southern New Mexico chile industry. For the past several years, Defendant Jurado has purchased Bamert's entire chile crop. Hernandez is a labor contractor providing chile pickers to area farmers. Although other labor contractors exist, both Bamert and Defendant Jurado contract with Hernandez to have their chiles picked.

Plaintiffs participated in and testified against Jurado in Palacios. Shortly thereafter, Jurado compiled a list of workers involved in the lawsuit. One day, Jurado recognized that one of Hernandez' chile pickers, who was working on Bamert's farm, had participated in the lawsuit against him. Jurado warned Bamert about the worker and provided him a list naming seven workers who were involved in Palacios. Jurado told Bamert that the workers were litigious and that he needed to be careful in dealing with them.

Bamert forwarded the list to Hernandez and relayed what Jurado told him about the workers on the list. The next day, Hernandez personally fired Ortiz and ordered Reyes to fire Soto. Hernandez told Soto about the list and that Bamert told Hernandez

8

that Soto was a "bad element." Hernandez told Ortiz that Jurado and Bamert would not allow him to work anymore. The day Hernandez fired Soto and Ortiz, the men visited a lawyer who contacted Hernandez. The lawyer told Hernandez that it was illegal to retaliate against the two men for participating in Palacios. The next day, Soto and Ortiz were both called back to work and paid for the previous day. No other workers on the list were subsequently fired.

From these facts, we believe a reasonable finder-of-fact could conclude by a preponderance that Jurado, Hernandez and Bamert conspired to terminate Soto and Ortiz because they participated in Palacios. We further conclude that the challenged statements were made during the course, and in furtherance of the conspiracy. Thus, the district court did not abuse its discretion in admitting the coconspirator statements. As noted above, our disposition of Defendants' argument that the district court improperly admitted Plaintiffs' hearsay testimony also disposes of Defendants' contention that the evidence did not support the district court's finding that Defendant Arturo Jurado conspired to terminate Plaintiffs for participating in Palacios. For the sake of clarity, however, we formally reject Defendants' sufficiency argument and conclude that its finding that Jurado conspired to terminate Plaintiffs was not clearly erroneous.

B.

Defendants next contend that the "district court erred in awarding damages to plaintiffs, because the evidence was insufficient to support the damages awarded and

9

because the district court relied on matters outside the record in fixing the amount of damages awarded. "Our review of a damages award is constrained by familiar principles. The award itself must be supported by substantial evidence." Wulf v. City of Wichita, 883 F.3d 842, 874 (10th Cir. 1989) (citing Grunenthal v. Long Island R.R., 393 U.S. 156, 159-60 (1968)). Compensatory damages are not limited to lost wages and other monetary harms, but also include injuries such as damage to reputation, personal humiliation, and emotional distress. See Memphis Comm. School Dist. v. Stachura, 477 U.S. 299, 307 (1986).

Plaintiffs testified that Jurado's participation in the conspiracy damaged their reputation with area farmers and caused them to fear that they would not be able to get work in the area. In addition, the record contains evidence showing that Jurado's acts actually damaged Plaintiffs' reputations. For example, the record shows that after Jurado told Bamert that Plaintiffs were litigious and needed to be watched, Bamert felt the need to warn Hernandez. Drawing the inferences in favor of the district court's findings, the information undoubtedly harmed their reputation with respect to Hernandez – he fired them. Moreover, considering the fact that Hernandez was the labor contractor who provided Plaintiffs with work, it was reasonable for the district court to conclude that they legitimately feared their future ability to obtain work in the area. Although Plaintiffs "testimony and the evidence presented are not the most graphic and detailed display" of reputation damage and emotional distress, we cannot conclude that the district court's

10

damage award is not supported by substantial evidence. See Wulf, 883 F.2d at 875.

Defendants further contend that the district court improperly based its award on facts not in the record. Specifically, Defendants contend that the district court improperly concluded that: (1) Jurado farms had been valued at $4,819,858; (2) Plaintiffs had a legitimate fear they would not be able to work on area farms; and (3) Plaintiffs feared they would not be able to provide for their families. Viewed in a light most favorable to Plaintiffs, the record supports the district court's findings that Plaintiffs feared they would not be able to get work in the area and that Plaintiffs feared they would not be able to provide for their families. Furthermore, Defendants' argument that the district court erroneously considered the value of Jurado farms is of little relevance. Assuming Defendants are correct regarding the issue of value, the evidence nonetheless supports the damage award.

## C.

Defendants finally complain that the district court's award of attorneys' fees must be reversed because the award was both excessive and unreasonable. We review the district court's award of attorneys' fees for an abuse of discretion. Anderson v. Secretary of Health and Human Services, 80 F.3d 1500, 1504 (10th Cir. 1996). In doing so, we generally defer to the district court's judgment because its first-hand knowledge of the attorneys' work gives it a far better means of knowing what is fair and just than an appellate court can glean from the record on appeal. Id. Nonetheless, the district court

11

should provide a clear and concise explanation of its reasons for awarding fees. New Mexico Citizens For Clean Air And Water v. Espanola Mercantile Company, Inc., 72 F.3d 830, 834 (10th Cir. 1996). Although the explanation need not identify and justify each hour permitted or denied, the order should be specific enough to provide this court with an adequate basis for review. Id.

The most useful starting point for determining whether the district court's award of attorneys' fees is proper is the number of hours reasonably expended multiplied by a reasonable hourly rate. Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983). We have described this basic concept – reasonable hours times reasonable rate – as the "lodestar figure." Anderson, 80 F.3d at 1504. The party seeking attorneys' fees bears the burden of proving that the time expended was reasonable and what rate is reasonable for that particular litigation. Case v. Unified School Dist. No. 233, Johnson County, 157 F.3d 1243, 1250 (10th Cir. 1998). A reasonable rate is generally the going rate for an attorney of the same experience level, in the same community, for the same type of work. Id. at 1255-56. Reasonable hours generally include the time necessary for a competent attorney to thoroughly prepare and try the case. See id. at 1250. A party may not recover attorney's fees for tasks easily delegated to a non-professional assistant. Espanola Mercantile, 72 F.3d at 835. Thus, in order to prevent paying "a Michelangelo . . . Sistine Chapel rates for painting a farmer's barn," the court must scrutinize the records and weed out non-professional and excessive tasks. Id. (quoting Ursic v. Bethlehem Mines, 719

12

F.2d 670, 677 (3d Cir. 1983)).

Although the district court's judgment does not contain meticulous detail describing its award of attorneys' fees, our review of the record convinces us it did not abuse its discretion.  The record demonstrates that after Plaintiffs presented their billing records and evidence of reasonable rates in their legal community, the district court determined what it deemed a reasonable lodestar figure.  Defendants' filed a motion to amend the judgment, arguing that Plaintiffs' fee requests were unreasonable.  Defendants' specifically pointed to duplicative work and non-professional tasks which it believed should not be compensated at legal service rates.  The district court agreed, and cut Plaintiffs' attorneys' fees by approximately $16,000.  The district court specifically marked the time entries it struck in reducing Plaintiffs attorney's fees.  In sum, we uphold the district court's fee award.  We do note, however, that a more detailed analysis of the fee application would have made our review of the award considerably less demanding.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

13